*226 OPINION OF THE COURT
Titone, J.
A police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself from harm while he conducts the inquiry authorized by CPL 140.50 (1). In People v Lindsay (72 NY2d 843, 845), we left open the question whether under article I, § 12 of our State Constitution such an intrusion may extend to items within the passenger compartment of the suspects’ vehicle solely on the theory that "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and will then have access to any weapons inside” (Michigan v Long, 463 US 1032, 1052). Having been squarely presented with the issue by the parties’ submissions on this appeal, we now answer that question in the negative and hold that, despite the Supreme Court’s approval of such intrusions in Michigan v Long (supra), our more protective State constitutional provisions prohibit them under the circumstances presented here (NY Const, art I, § 12).
At approximately 11:00 a.m. on the morning of October 25, 1985, the police received a telephone tip from an anonymous caller that an individual known as "Poppo,” who was wanted on homicide charges, could be found having his hair cut at a barber shop located at 116th Street and Third Avenue in Manhattan. The suspect was described as a large, six-foot tall Hispanic male wearing a white sweater, driving a black Eldorado and carrying a gun in a shoulder bag.
Arriving at the specified address shortly after this tip was received, two plain-clothes detectives saw defendant leave the barber shop with another man and enter a black Eldorado. Defendant, who fit the anonymous caller’s description, was wearing a white sweater and carrying a green nylon shoulder bag. The detectives approached the car with their guns drawn and, after identifying themselves, ordered the two occupants to exit and immediately frisked each of them. While defendant was still being frisked, the detective who had just patted down defendant’s companion reached into the car and took the shoulder bag from the front seat, where it had been left by defendant. Having immediately noticed its unusual weight, the detective felt the outside of the bag, discerned the shape of a gun and, upon unzipping the bag, discovered a three-inch Rossi revolver and several rounds of live ammunition.
*227 Defendant pleaded guilty to third degree criminal possession of a weapon after his motion to suppress the physical evidence was denied. The suppression court held that the anonymous tip, coupled with the detectives’ on-the-scene observations, was sufficient to justify the detectives’ intrusive actions. On appeal from the judgment of conviction, a divided Appellate Division affirmed (143 AD2d 40).[1] Dissenting alone, the Presiding Justice argued that, regardless of whether the initial frisk was proper, there was no basis for the detectives to reach into the car and remove the shoulder bag, since its presence presented no immediate threat to the officer’s safety (143 AD2d, at 42-44 [Murphy, P. J., dissenting]). We agree with the dissenter’s view and, accordingly, reverse.
On this record, there is room for disagreement as to whether the anonymous tip, coupled with the detectives’ on-the-scene observations, provided support for the finding below that the forcible stop and frisk was reasonable. However, even assuming the reasonableness of the detectives’ conduct in ordering the suspects out of the car and conducting a protective pat-down, once the detectives had frisked the two men, and had thereby satisfied themselves that there was no immediate threat to their safety, there was, as a matter of law, no justification for conducting a further, more intrusive search extending to the removal of personal effects on the front seat of defendant’s car. At most, the detectives may have had a reasonable basis for suspecting the presence of a gun. Their information plainly did not rise to the level of probable cause to search closed containers within the car’s passenger compartment for a weapon (People v Elwell, 50 NY2d 231; see, People v Belton, 55 NY2d 49 [on remand]). Thus, the actions of the detectives may be justified only if the expansive view of the Terry v Ohio (392 US 1) "stop and frisk” procedure that was adopted in Michigan v Long (463 US 1032, supra) is determined to be consistent with the privacy rights guaranteed by our State Constitution (NY Const, art I, § 12).
*228 In concluding that it is not, we note that although the history and identical language of the State and Federal constitutional privacy guarantees (US Const 4th Amend; NY Const, art I, § 12) generally support a "policy of uniformity,” this court has demonstrated its willingness to adopt more protective standards under the State Constitution "when doing so best promotes 'predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens’ ” (People v P. J. Video, 68 NY2d 296, 304 [on remand], quoting People v Johnson, 66 NY2d 398, 407). Accordingly, we have in recent years carved out an independent body of principles to govern citizen-police encounters in a number of specific areas (see, e.g., People v P. J. Video, supra [warrant application requirements in obscenity cases]; People v Bigelow, 66 NY2d 417 [declining to follow "good faith” test outlined in United States v Leon (468 US 897) and Massachusetts v Sheppard (468 US 981)]; People v Johnson, 66 NY2d 398, supra [declining to apply "totality of circumstances” test outlined in Illinois v Gates (462 US 213) to warrantless arrests]; People v Class, 67 NY2d 431 [on remand] [search for vehicle identification number in connection with traffic stop]; People v Gokey, 60 NY2d 309 [warrant-less search incident to arrest]; People v Belton, 55 NY2d 49, supra [search of personal effects within automobile]; People v Landy, 59 NY2d 369 [reiterating Elwell rule]; People v Elwell, 50 NY2d 231, supra [probable cause predicated on informant’s tip]; see also, People v Stith, 69 NY2d 313, 316, n [exclusionary rule as it pertains to inevitable discovery doctrine]).
Our present decision to add to this emerging body of precedent rather than to follow the Federal position was foreshadowed by our analysis in People v Belton (55 NY2d 49, supra). Indeed, it is significant that Michigan v Long (supra), the decision on which the People’s and dissenter’s positions are premised,[2] was, at least in part, an elaboration of the Supreme Court’s analysis in New York v Belton (453 US 454), an analysis which we have declined to follow (see, People v Belton, 55 NY2d 49, supra; see also, People v Gokey, supra).
*229 In Belton, which involved a search of a closed container within the passenger compartment of an arrestee’s automobile, we invoked the State Constitution and held that, under our own "automobile exception” to the rule against warrant-less searches, an automobile’s passenger compartment, and closed containers within that compartment, may be searched "where police have validly arrested an occupant * * * and * * * have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted” (id., at 55). In adopting this position, we expressed our dissatisfaction with the Supreme Court’s position under the Fourth Amendment that such a search is permissible as an incident to a lawful arrest (id., at 52-53; see, New York v Belton, 453 US 454, supra). We noted that the Supreme Court’s position in Belton was a drastic departure from Chimel v California (395 US 752) and that "[o]nce the exception is employed to justify a warrantless search for objects outside an arrested person’s reach it no longer has any distinct spatial boundary” (55 NY2d, at 53). Quoting from then-Judge Wachtler’s opinion in People v Brosnan (32 NY2d 254, 267), we observed that " 'search and seizure law [becomes] uncontrollable when the rubric [is] adopted and the rationale discarded’ ” (55 NY2d, at 53). That observation is equally apt in this context.[3]
A police officer’s entry into a citizen’s automobile and his *230 inspection of personal effects located within are significant encroachments upon that citizen’s privacy interests (cf., People v Class, 63 NY2d 491, 495, revd 475 US 106, adhered to on remand 67 NY2d 431, supra). Under our own long-standing precedent, such intrusions must be both justified in their inception and reasonably related in scope and intensity to the circumstances which rendered their initiation permissible (People v De Bour, 40 NY2d 210, 215). While there are certainly legitimate law enforcement concerns that would justify such an intrusion (see, People v Blasich, 73 NY2d 673; People v Belton, 55 NY2d 49, 55, supra), such concerns were simply not present here.
The need here, as one commentator has noted, was "only to find implements which could be reached by the suspect during the brief face-to-face encounter, not to uncover items cleverly concealed and to which access could be gained only with considerable delay and difficulty” (1 La Fave & Israel, Criminal Procedure § 3.8 [e], at 309; see also, People v Smith, 59 NY2d 454, 458). In this instance, for example, the suspects had already been removed from the car, a permissible intrusion if there was reasonable suspicion of criminality in light of the need to protect the detectives’ safety (Pennsylvania v Mimms, 434 US 106; People v McLaurin, 70 NY2d 779). Further, the suspects had been patted down without incident. At that point, there was nothing to prevent these two armed detectives from questioning the two suspects with complete safety to themselves, since the suspects had been isolated from the interior of the car, where the nylon bag that supposedly contained the gun was located. Any residual fear that the detectives might have had about the suspects’ ability to break away and retrieve the bag could have been eliminated by taking the far less intrusive step of asking the suspects to move away from the vicinity of the car (see, 1 La Fave & Israel, op. cit, at 310). Finally, it is unrealistic to assume, as the Supreme Court did in Michigan v Long (supra, at 1051-1052), that having been stopped and questioned without incident, a suspect who is about to be released and permitted to proceed on his way would, upon reentry into his vehicle, reach for a concealed weapon and threaten the departing police officer’s safety. Certainly, such a far-fetched scenario is an *231 insufficient basis upon which to predicate the substantial intrusion that occurred here (see, People v De Bour, supra).[4]
For all of these reasons, we conclude that the detective’s conduct in reaching into defendant’s car and removing his bag, conduct which revealed the presence of a gun, was not reasonably related to the need to protect the officers’ safety in this street encounter. The detective’s actions were thus improper under article I, § 12 of our State Constitution, and the resulting evidence should have been suppressed.
Finally, addressing the dissent, we are not unmindful of the reality of the day, including the risks faced by police officers in street encounters in the course of discharging their official duties. Nor are we unmindful of the fact that what is at issue here is an anonymous tip. The rule we fashion asks only that, once the officers have taken steps to secure their own physical safety, they limit their intrusion to the inquiry permitted by CPL 140.50. Accordingly, the order of the Appellate Division should be reversed, the evidence suppressed and the indictment against defendant dismissed.

. Three of the Justices on the Appellate Division panel concurred in a memorandum that questioned the detectives’ right to conduct an immediate frisk, but nevertheless found that it was reasonable for them to have removed the bag from defendant’s car for their own protection (143 AD2d 40, 40-41 [Smith, J., concurring]). Two of the Justices who joined that memorandum, and another Justice who did not, concurred in a separate memorandum, which stated that both the frisk and the touching of the shoulder bag were justified by the anonymous tip and the detectives’ detailed confirmatory observations (143 AD2d, at 41-42 [Rosenberger, J., concurring]).

. Two of the dissenter’s three theories in support of his conclusion that the detectives’ actions were justified are based either directly on Michigan v Long (463 US 1932) or on our own decision in People v Lindsay (72 NY2d 843), which was, in turn, a simple application of the Michigan v Long holding (see, dissenting opn, at 234). The third "theory” discussed in the dissenting opinion is not so much an independent ground for approving the detectives’ conduct as it is an effort to distinguish prior State precedent suggesting the contrary (see, People v Belton, 55 NY2d 49).

. The dissenter’s attempt to avoid the implications of Belton by characterizing this case as "partak[ing] mostly of a street and only incidentally and fortuitously of a vehicle encounter” is unpersuasive (see, dissenting opn, at 234). First, if this had been a true street encounter and defendant had simply dropped his bag on a park bench or automobile fender in response to the detectives’ lawful approach, the officers’ right to seize and inspect its contents would have been governed by the entirely separate body of case law involving abandoned property, as to which there is generally no expectation of privacy (see, 1 Ringel, Searches and Seizures § 8.4, at 8-32 — 8-37 [2d ed]; see generally, People v Boodle, 47 NY2d 398). It is precisely because an automobile was involved here that defendant had an expectation of privacy in personal effects not on his immediate person and the need for a constitutionally adequate justification for the intrusion arises. Thus, the presence of an automobile in this encounter is not, as the dissenter suggests an analytically insignificant part of this fact pattern (dissenting opn, at 234). Second, although the ultimate holding in Belton was based on the so-called "automobile exception” to the general rule requiring warrants, the aspect of the Belton analysis on which we rely concerns its insistence upon a logical and conceptual relationship between the property to he seized or searched and, the predicate for that action (55 NY2d, at 52-53). As is evident from our holding in People v Gokey, 60 NY2d 309), that portion of the Belton decision *230 is not limited to automobile encounters, but rather extends to all so-called "grab area” searches.

. This is not to suggest that the degree of probable cause outlined in People v Belton (55 NY2d 49, 55) is always required as a predicate for conducting a limited intrusion and search of the passenger compartment of the suspect’s car. Indeed, there may well be circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers’ safety sufficient to justify a further intrusion, notwithstanding the suspect’s inability to gain immediate access to that weapon. Of course, in such circumstances, the police officers would have a right to take further steps to protect themselves so that their investigation could be completed without risk to themselves. What we reject here is simply the suggestion that the substantial intrusion involved in even a limited entry into and search of a suspect’s vehicle could be justified purely on the theoretical basis, adopted in Michigan v Long (463 US 1032), that harm could occur after the investigation is terminated and the suspect is permitted to reenter his vehicle.