OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Defendant, a passenger in an automobile stopped for a traffic infraction, was arrested when the police discovered a gun under his seat. Defendant challenges the legality of the search that took place after he and the other occupants were removed
 
 *709
 
 from the vehicle. We are thus called upon once again to determine whether information acquired by the police during the course of a traffic stop justified further intrusion into the interior of an automobile.
 

 We agree with the courts below that the police action here was proper. Defendant was wearing an article uniquely indicative of his present readiness to use an available firearm — a bulletproof vest. This salient fact, when coupled with the police observation of defendant furtively placing something beneath his seat, warranted the conclusion that a weapon located in the vehicle presented an actual and specific threat to the officers’ safety. In these particular circumstances, the officers could lawfully reach into the vehicle, even after removing the driver and passengers.
 

 Facts
 

 At 1:20 a.m. on July 29, 1992, Police Officer Mucciariello stopped a white Cadillac with four occupants at Ninth Avenue and 26th Street in Manhattan, because it had no rear license plate. He approached the driver’s side and asked for her license, registration and insurance card. When the driver was unable to present any paperwork, the officer returned to his patrol car to prepare a summons.
 

 At that time, Police Officers Dalton and Mascaro arrived at the scene. Knowing that Mucciariello was alone, they exited their vehicle to determine whether he needed back-up. As Dalton approached the Cadillac on the passenger side, he noticed defendant, in the rear passenger seat, bend down and place something under the seat with his right hand. He also observed that defendant was wearing a bulletproof vest under his sweatshirt. Dalton was able to identify the vest because he had worn one himself for the past 11 years.
 

 All four individuals were removed from the car. Dalton patted defendant down and, finding nothing, handed him to Mascaro. Dalton then reached into the car, under the rear passenger seat, and recovered a gun from the spot where defendant had been seated. Defendant and the others were arrested and taken to the precinct. After being advised of his constitutional rights, defendant made oral and written statements.
 

 Defendant moved to suppress the weapon and statements as fruits of an unconstitutional search. After crediting Dalton’s testimony concerning his observations that evening, the suppression court found that the officers had lawfully stopped the
 
 *710
 
 automobile and ordered the occupants out of the car, and that Dalton’s act of reaching into the car was justified. The court thus denied the motion to suppress, and defendant ultimately pleaded guilty to attempted criminal possession of a weapon in the third degree. The Appellate Division, with one Justice dissenting, agreed with the suppression court and affirmed, as do we.
 

 Discussion
 

 As an initial matter, the Cadillac was lawfully stopped upon Officer Mucciariello’s observation that it was missing a rear license plate
 
 (see, People v Ingle,
 
 36 NY2d 413). It was, moreover, proper to direct the driver and passengers to exit the detained vehicle
 
 (see, People v Robinson,
 
 74 NY2d 773,
 
 cert denied
 
 493 US 966). The more difficult question is whether, once defendant and the other occupants had been removed from the automobile, the police could lawfully commit the greater intrusion of reaching into the vehicle.
 

 In
 
 People v Torres
 
 (74 NY2d 224, 226), the Court explained that "[a] police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself from harm.” Consequently, we held that, absent probable cause, it is unlawful for a police officer to invade the interior of a stopped car once the suspects have been removed and patted down without incident and any immediate threat to safety thereby eliminated. In doing so, we rejected the conclusion of the United States Supreme Court in
 
 Michigan v Long
 
 (463 US 1032) that such an intrusion "could be justified purely on the
 
 theoretical
 
 basis * * * that harm could occur after the investigation is terminated and the suspect is permitted to reenter his vehicle” (74 NY2d at 231, n 4 [emphasis in original]).
 

 The Court articulated in
 
 Torres,
 
 however, a narrow exception to this rule. After clarifying that we did not mean our holding "to suggest that the degree of probable cause outlined in
 
 People v Belton
 
 (55 NY2d 49, 55) is always required as a predicate for conducting a limited intrusion and search of the passenger compartment of the suspect’s car,” we explained:
 

 "Indeed, there may well be circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered dur
 
 *711
 
 ing the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officer’s safety sufficient to justify a further intrusion, notwithstanding the suspect’s inability to gain immediate access to that weapon.”
 
 (People v Torres,
 
 74 NY2d at 231, n 4.)
 

 Notwithstanding this acknowledgment that a further intrusion might be justified even in the absence of probable cause, we made clear that the likelihood of a weapon in the car must be substantial and the danger to the officer’s safety "actual and specific.” We emphasized, moreover, that a reasonable suspicion alone will not suffice. Indeed, in
 
 Torres
 
 itself the police received an anonymous tip that a man wanted on homicide charges could be found at a particular barber shop, driving a black Eldorado and carrying a gun in a shoulder bag. Defendant, who fit the description, left the barber shop carrying a shoulder bag and entered a black Eldorado. Nevertheless, because this information provided the police with nothing more than "a reasonable basis for
 
 suspecting
 
 the presence of a gun,” it was insufficient to entitle the police to remove the bag from the front seat and search it once defendant and his companion had been ordered out of the car and frisked
 
 (id.,
 
 at 227 [emphasis in original];
 
 see also, People v Snyder,
 
 178 AD2d 757,
 
 affd
 
 80 NY2d 815 [observation of empty holster on passenger seat of defendant’s car, which matched description given in police radio broadcast of car used in an assault that possibly involved a gun, was insufficient to justify search of vehicle once suspects had been removed from the car and frisked]).
 

 Defendant urges that the police here had even less reason than in
 
 Torres
 
 to believe there was a weapon within the automobile, since his conduct was innocuous and the police had no information connecting him to any crime or weapon. We disagree.
 

 In
 
 People v Ellis
 
 (62 NY2d 393), we held that the discovery of bullets during a frisk of a suspect stopped for a traffic infraction provided the police with probable cause to search the glove compartment of the stopped vehicle. We distinguished bullets from other lawful items incidentally related to guns — such as holsters or practice targets — the discovery of which permit only an inquiry by police
 
 (see, People v Johnson,
 
 54 NY2d 958). Bullets, by contrast, "have no other practical use than as ammunition for a deadly weapon” and are, therefore, "more immediately associated with the presence of a deadly weapon”
 
 (People v Ellis,
 
 62 NY2d at 397).
 

 
 *712
 
 Unlike bullets, a bulletproof vest has a "practical use” by itself as a measure of protection
 
 (id.,
 
 at 397). We have therefore explained that "more is usually required to justify a frisk of the suspect”
 
 (People v Batista,
 
 88 NY2d 650, 655). Like bullets, however, the wearing of a bulletproof vest is more immediately associated with the presence and use of a firearm than an empty holster or practice target. As we have previously noted, a bulletproof vest "is designed to prevent the penetration of bullets,” and there is an "inherent linkage between a vest and possession of a firearm”
 
 (People v Batista,
 
 88 NY2d at 655;
 
 see, People v Smith,
 
 59 NY2d 454, 459). Indeed, "[t]he whole purpose of the wearing of the vest is to make it more feasible to go armed, [and] to enhance the advantage of doing so”
 
 (People v Heath,
 
 203 AD2d 17, 19,
 
 affd
 
 86 NY2d 723). The act of wearing a bulletproof vest thus suggests more than the presence of a deadly weapon — it demonstrates its owner’s
 
 readiness and willingness to use a deadly weapon (see,
 
 Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 270.20, at 480-481 [noting that " 'when criminals have the vest on they believe they are invincible and are less likely to surrender without a fight’ ” (quoting NY Times, Mar. 27, 1984, at 1, col 1)];
 
 see also, People v Heath,
 
 86 NY2d at 725,
 
 supra).
 

 Here, then, defendant wore an article that uniquely evidenced his preparation to engage in gun battle as well as his enhanced ability to safely use a deadly weapon. Sheathed in this protective armor, he also suspiciously bent down and hid something beneath his car seat as the police approached. There was thus evidence in the record to support the finding that the officers could reasonably have concluded that "a weapon located within the vehicle presented] an actual and specific danger” to their safety
 
 (People v Torres,
 
 74 NY2d at 231, n 4,
 
 supra).
 
 We therefore do not disturb the Appellate Division’s determination that the limited police intrusion of reaching into the area of the automobile where defendant had been seated was justified, even though defendant was unable to gain immediate access to any weapon located therein
 
 (id.).
 

 *
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 
 *713
 
 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed.
 

 *
 

 We note that we have
 
 not
 
 considered whether the police here had probable cause to search the stopped vehicle. That mixed question of law and fact was not addressed by the lower courts.