■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES O'NEAL, Appellant. [670 NYS2d 201] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Demakos, J.), rendered May 25, 1995, convicting him of criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Golia, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and a statement made by him to law enforcement officials.

Ordered that the judgment is affirmed.

Some time between 1:00 A.M. and 1:15 A.M. on May 22, 1993, New York City Transit Authority Police Officer Regina Tucker and her partner, Officer Quentin Larkins, were walking from the Queensborough train station to the Queens Plaza station when a car came speeding up to them and skidded to a halt. The two occupants yelled to the officers that someone in the car behind them had just shot a man in the head at the taxi stand. They did not indicate how they had obtained that information, but they pointed to the car directly behind them, the only other vehicle on the street, which was stopped at a traffic

light. Tucker radioed for assistance and she and Larkins ran to the car with their guns drawn. Tucker approached the passenger side of the vehicle and directed the driver, the first person she observed, to put his hands up. As he did so, Tucker saw a second and third pair of hands go up, and realized there were passengers in the front and rear seats. Tucker had not initially seen the front seat passenger because he was slumped over toward the driver, and had to raise himself from that position in order to put his hands up. Tucker later learned that the driver was the defendant James O'Neal. A codefendant, Norman Allen, was the front seat passenger and another codefendant, Jose Martinez, was the rear seat passenger.

The officers directed the defendant and the others to exit the vehicle. For safety reasons, they handcuffed the men, patted them down and had them lie on the ground. When the officers did not recover any weapons, Tucker asked, "Where's the gun?", and Martinez replied that he did not know. Larkins then went to the car, reached under the front passenger seat and recovered a loaded .25 caliber gun.

At that point, Tucker realized that the two informants had left the scene. However, they returned, along with a third man, approximately 15 minutes after they initially spoke with the officers. The third individual, an eyewitness to the crime, identified Allen as the shooter. The defendant, Allen, and Martinez were then arrested and taken to the precinct house, where the defendant made an unsolicited statement to a detective.

The defendant contends that the Supreme Court erred in denying those branches of his omnibus motion which were to suppress the gun and the statement made in the precinct house. We disagree.

The information obtained by the officers during their face-to-face encounter with the citizen informants provided them with reasonable suspicion that the occupants of the vehicle had just committed a homicide and were in possession of the weapon used in that crime. Consequently, the officers' approach with guns drawn, their direction that the occupants exit the vehicle, and their frisk of those men for weapons were justified actions (see, *People v Sledge*, 225 AD2d 711). The defendant contends, however, that Larkins' act of reaching into the automobile and recovering the gun was unlawful in that the officers lacked probable cause and had already secured the occupants outside the vehicle.

A police officer's conduct in entering an automobile and retrieving property located inside the vehicle must be justified

in its "inception and reasonably related in scope and intensity to the circumstances" which made initiation of the conduct permissible (*People v Torres*, 74 NY2d 224, 229-230). A limited intrusion into an automobile may be justified even where probable cause is absent (*see, People v Carvey*, 89 NY2d 707, 711). "[T]here may well be circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety sufficient to justify a further intrusion, notwithstanding the suspect's inability to gain immediate access to that weapon" (*People v Torres, supra*, at 231, n 4). Such circumstances were present here.

This case does not involve a routine traffic stop or a situation where the police were acting on an anonymous tip regarding a person suspected of committing a crime at some earlier point in time (*compare, People v Torres, supra; see, People v Harris*, 160 AD2d 515, 517). Rather, the police received information directly from citizen informants, albeit unidentified, about a homicide which had just been committed by someone who was presently in a specifically-identified automobile in the officers' view. So far as the officers knew, the vehicle was escaping from the nearby scene of a homicide. Consequently, there was a strong likelihood that a weapon was in the vehicle. The officers' failure to immediately ascertain the identity of the informants and the basis of their knowledge was understandable given the officers' priority, which was to approach the vehicle occupied by a presumably-armed perpetrator while that vehicle was still stopped (*see, People v Harris*, 175 AD2d 713, 715). The violent nature of the crime which reportedly just occurred demonstrated the perpetrators' present " '*readiness and willingness to use a deadly weapon*' ", heightening the officers' safety concerns (*People v Carvey, supra*, 89 NY2d, at 712; *People v Vehap*, 234 AD2d 210; *People v Harris, supra*, 160 AD2d, at 517).

In addition, when Tucker approached the automobile, she observed Allen slumped over in the front seat. When she subsequently asked about the location of the gun, Martinez did not dispute or deny its existence, but rather indicated that he did not know where it was. The information received by the officers from the citizen informants, coupled with the officers' subsequent observations created a substantial likelihood that the gun was located in the automobile, had possibly been secreted by the slumped-over passenger, and presented more than a theoretical threat of harm (*see, People v Carvey, supra*,

at 712; *cf., People v Torres, supra*). Under the circumstances, the limited intrusion of reaching under the seat where Allen was seen slumped over, and retrieving the gun was justified (*see, People v Carvey, supra; People v Cisnero*, 226 AD2d 279). Since neither the gun nor the defendant's subsequent spontaneous statement was the fruit of any unlawful police conduct, the hearing court properly denied those branches of the defendant's motion which were to suppress physical evidence and his statement. Bracken, J. P., O'Brien, Thompson and Altman, JJ., concur.