■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE MUNDO, Appellant. [730 NYS2d 305] —Judgment, Supreme Court, New York County (Laura Drager, J., at suppression hearing; William Leibovitz, J., at jury trial and sentence), rendered November 1, 1999, convicting defendant of criminal possession of a controlled substance in the first and third degrees, and sentencing him to concurrent terms of 15 years to life and 6 to 18 years, respectively, modified, as a matter of discretion in the interest of justice, to the extent of vacating the conviction on the third-degree possessory charge and dismissing that count of the indictment, and otherwise affirmed.

Two police officers from an anti-crime unit were on patrol in an unmarked car in the Washington Heights section of Manhattan, on a July afternoon in 1997, when they spotted a white Nissan automobile with Florida license plates making a right turn through a steady red light. The officers followed, activating their flashing lights, with the intention of notifying the driver that a right turn on a red light was not permitted in New York City. The Nissan came to a stop on West 156th Street, but as the officers approached the vehicle on foot, the Nissan driver pulled away at a slow speed. The officers quickly returned to their car and gave chase, this time activating their siren horn in addition to the flashing lights. Again, the Nissan came to a stop, but again, just as the officers alighted, the Nissan drove off. As the officers pursued a third time, the Nissan

nearly struck a pedestrian who was crossing the street. They were able to see a driver and a passenger in the front seat, and defendant seated alone in the back. During the pursuit, defendant turned to face the police car, and then made an unusual movement that appeared as if he were hiding something in the center of the back seat. When the Nissan once again came to a stop, the officers this time approached with their guns drawn, their suspicions now aroused by the cat-and-mouse evasiveness of this out-of-State vehicle, coupled with defendant's furtive movements in the back seat. Each of the occupants was removed and patted down. One of the officers then went to the back seat to check for a possible weapon between the cushions where defendant had directed his movement. In running his hand along the seat and the center armrest, the officer detected an access panel to the trunk. Believing that defendant might have concealed a weapon there, the officer went to the rear of the car and opened the trunk. Immediately, there was recognition of the strong odor of a chemical commonly used to "cut" or "cook" cocaine. The only item in the trunk was a white plastic bag containing sneakers and something wrapped in foil. As the officer reached into the trunk, his partner, who understood Spanish, heard defendant twice mutter to his companions in that language, "They're going to find it." The searching officer retrieved the foil package which concealed a Ziploc bag containing a powdery substance later determined to be almost a kilogram of cocaine.

As a threshold matter, the police acted within their authority in stopping this vehicle and even directing the driver and passengers to exit (*see, People v Carvey*, 89 NY2d 707, 710). The issue now is whether there were sufficient grounds to conduct a limited search of the vehicle.

The court properly denied defendant's motion to suppress the drugs recovered from the trunk. Under the totality of the circumstances of this case, where the car in which defendant was riding took an extraordinary series of evasive actions as it was being pulled over for running a red light, coupled with defendant's furtive activity in the back seat while eyeing the pursuing police car, the officers had actual and specific reason to believe it to be a substantial likelihood that defendant had secreted a weapon in that area, and were thus justified in performing a limited search of the area after removing and frisking the passengers (*People v Worthy*, 261 AD2d 277, *lv denied* 93 NY2d 1029; *People v Cisnero*, 226 AD2d 279, *lv denied* 88 NY2d 1020). Where a rear-seat passenger makes obvious motions consistent with stashing a possible weapon,

we see no difference whether the place of concealment is in a container, under the front seat, between the seat cushions, or through an access panel to the trunk (*see, People v Peart*, 283 AD2d 14).

The *Carvey* case (*supra*) bears some discussion because of an additional element that further raised the suspicions of the police. The traffic infraction that led to the initial stop was a missing rear license plate. As the officer approached, he noticed the defendant, seated in the rear, bending down to place something under the seat. The officer then observed that the defendant was wearing a bulletproof vest. The Court of Appeals upheld the limited search. While the additional element of the vest certainly heightened the officer's suspicion of a concealed weapon, our subsequent decision in *Worthy* (*supra*) found justification for a search based solely on a traffic infraction coupled with similar furtive movements by an occupant of the vehicle. In sum, the extra ingredient which tipped the scales justifying the search of the auto's interior in *Carvey* was the bulletproof vest worn by one of the occupants. Here, the extra ingredient was the escalating evasive action by the driver of the vehicle, carried out with the evident purpose of providing sufficient time for his passenger to secrete a weapon.

Defendant was not deprived of any rights when his attorney consented, in his absence, to the excusal of various prospective jurors for reasons generally related to their availability for service (*see, People v Sprowal*, 84 NY2d 113, 117). As defendant concedes, he was not entitled to be present at sidebar discussions with prospective jurors concerning such potentially disqualifying factors as their health, family responsibilities and work commitments (*People v Velasco*, 77 NY2d 469, 473). These were not the types of discretionary determinations by counsel and the court upon which defendant himself could have had a meaningful input.

Since the third-degree possessory charge, while not a lesser included offense of the first-degree charge, arose from possession of the same cocaine without any further activity, dismissal of that non-inclusory concurrent count is appropriate in the interest of justice (*see, People v Gaul*, 63 AD2d 563, *lv denied* 45 NY2d 780). Concur—Nardelli, Tom, Wallach and Saxe, JJ.

Rosenberger, J. P., who dissents in a memorandum as follows: I respectfully dissent and would reverse the order of the suppression court which denied defendant's motion to suppress evidence seized by the police.

Both in his brief and at oral argument, defendant conceded that the automobile was lawfully *stopped* and that the oc-

cupants were lawfully removed. He does not complain about the length of his detention or about the fact that he was forced to kneel on the ground, away from the vehicle, with his legs crossed behind him. The only issue presented is the propriety of the search of the vehicle after he had been removed, frisked, and detained. Therefore, no extended discussion of the facts is required here.

To begin, the police may not search a vehicle simply because its driver committed a traffic infraction (*Knowles v Iowa*, 525 US 113; *People v Marsh*, 20 NY2d 98) nor does the fact that a driver may have committed reckless driving, a misdemeanor under the Vehicle and Traffic Law, grant authority for the search of the vehicle (*People v Howell*, 49 NY2d 778; *People v Troiano*, 35 NY2d 476).

The Court of Appeals, in *People v Torres* (74 NY2d 224 [1989]), stated: "The need here, as one commentator has noted, was 'only to find implements which could be reached by the suspect during the brief face-to-face encounter, not to uncover items cleverly concealed and to which access could be gained only with considerable delay and difficulty' (1 La Fave & Israel, Criminal Procedure § 3.8 [e], at 309; *see also, People v Smith*, 59 NY2d 454, 458). In this instance, for example, the suspects had already been removed from the car, a permissible intrusion if there was reasonable suspicion of criminality in light of the need to protect the detectives' safety (*Pennsylvania v Mimms*, 434 US 106; *People v McLaurin*, 70 NY2d 779). Further the suspects had been patted down without incident. At that point, there was nothing to prevent these two armed detectives from questioning the two suspects with complete safety to themselves, since the suspects had been isolated from the interior of the car, where the nylon bag that supposedly contained the gun was located. Any residual fear that the detectives might have had about the suspects' ability to break away and retrieve the bag could have been eliminated by taking the far less intrusive step of asking the suspects to move away from the vicinity of the car (*see,* 1 La Fave & Israel, *op. cit.,* at 310)" (at 230).

The Court went on to state that there might be circumstances in which facts revealed or information gathered after the stop "lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety sufficient to justify a further intrusion." (*Id.* at 231 n 4.) The Court at the same time rejected the theory that a search would be justified on the basis "that harm could occur after the investigation is terminated and the suspect is permitted to reenter his vehicle" (*id.*).

In *People v Carvey* (89 NY2d 707), the Court sustained the intrusion into a vehicle when the defendant was seen wearing a bulletproof vest. The Court held that the wearing of such a vest "demonstrates its owner's *readiness and willingness to use a deadly weapon*" (at 712). The wearing of the vest combined with the defendant's bending down and hiding something beneath the car seat as the police approached formed the predicate for the police action there at issue.

The Court reiterated that " 'a reasonable basis for *suspecting* the presence of a gun' " was insufficient to justify intrusion into the vehicle once the defendant had been removed from the car and frisked (at 711 [emphasis in original]). It went on to emphasize "the likelihood of a weapon in the car must be substantial and the danger to the officer's safety 'actual and specific' " (*id.*).

The "escalating evasive action by the driver," cited by the majority as justifying the search, spanned a distance of less than half a block from the place where the officers first turned on the flashing lights of their unmarked car. The speed of the auto in which defendant was a passenger was estimated by the police officers to be 5 to 7 miles per hour. Although the majority concludes that this "evasive action" was for the "evident purpose of providing sufficient time * * * to secrete a weapon," this conclusion was not evident to either of the officers, neither of whom so testified.

In this case, the officers did not testify that they perceived any danger to themselves from a weapon in the automobile, much less that any such perception of danger was "substantial" and "actual and specific." One of the officers testified that he approached the automobile with a drawn gun because he believed the car was stolen. He searched the automobile to "make sure he did not secrete any weapons." One officer testified that defendant's left arm was on top of the back of the back seat and that he could see his left hand. He further testified that he could not see the defendant's right arm or any movement which would indicate that his right arm was moving.

The other officer testified that he did not see defendant's arms, but saw his shoulders turn as defendant turned towards the center of the car and looked down at the seat of the automobile.

The suppression court, in its decision, specifically stated that it did not rely upon any statement made by defendant, after he was removed from the car, in reaching its conclusion.

The evidence reveals a complete failure to satisfy the criteria set forth in *People v Torres* (*supra*) and *People v Carvey* (*supra*). The motion to suppress should have been granted.