Ciparick, J.
(dissenting). Because I view the record as insufficient to support the Appellate Division’s finding that there was an “actual and specific danger” to officer safety, I dissent and would vote to reverse and grant defendant’s motion to suppress the evidence seized by the police.
During a routine afternoon patrol, two New York City police officers observed a white Nissan with Florida license plates, carrying three occupants, make an illegal right turn through a red light. Defendant was riding in the rear seat of the vehicle. After observing the traffic infraction, the officers activated their high intensity lights and attempted to stop the vehicle. The vehicle stopped and the officers casually approached.
As the officers neared the vehicle, it slowly pulled away. The officers returned to their vehicle, activated their lights and siren and followed the Nissan. The vehicle stopped again and *60 then proceeded to drive away as the officers approached. For a third time the officers continued after the vehicle, this time observing defendant, in the rear seat of the vehicle, turn to face the pursuing officers and make an “unusual” movement. This “chase” spanned approximately one half of a city block, with an estimated top speed of 10 miles per hour. The Nissan finally came to a halt, and this time the officers approached with their weapons drawn.
The officers advised the three occupants to exit the vehicle. The officers safely isolated the individuals on their knees and away from the car, frisked them and found nothing further to arouse their suspicions. Nevertheless, one of the officers proceeded to search the vehicle’s backseat. He pulled down the armrest revealing an opening to the trunk. There he saw a small package and smelled the distinct odor of a chemical used in processing cocaine. He then exited the car and opened the trunk to retrieve the package which contained approximately one kilogram of cocaine.
At issue here is the propriety of police conduct in executing a limited protective search of a vehicle after defendant and the other occupants had been removed from the vehicle, frisked and isolated. The rule in New York as articulated in People v Torres (74 NY2d 224 [1989]) is that a police officer may not search an automobile unless the search is both justified in its inception and reasonably related in scope and intensity to officer safety. Torres involved an anonymous telephone tip of a homicide suspect driving a black Eldorado and carrying a gun in a shoulder bag. The police stopped the vehicle, removed and frisked the passengers and entered the vehicle to remove a shoulder bag. Upon feeling and discerning the shape of a weapon, the officer opened the bag and revealed a gun. We ultimately held this search to be unconstitutional under our State Constitution. In deciding the propriety of police conduct we departed from the United States Supreme Court’s jurisprudence governing vehicle searches (see Michigan v Long, 463 US 1032 [1983]), in effect, providing New Yorkers with greater constitutional protections than those afforded by the Federal Constitution. Specifically, building upon the bedrock of state precedent, we adopted a two prong test, satisfaction of which justifies a limited intrusion into a suspect’s vehicle.
Thus, in order for an officer, lacking specific probable cause, to constitutionally conduct a limited search of a vehicle, there must be both a “[1] reasonable suspicion” of criminal activity, and (2) the officer must have an “articulable basis to fear for *61 his own safety” (People v Torres, 74 NY2d at 226). In departing from the federal example set in Michigan v Long (463 US at 1052), we expressly rejected “the suggestion that the substantial intrusion involved in even a limited entry into and search of a suspect’s vehicle could be justified purely on the theoretical basis, adopted in Michigan v Long” (Torres, 74 NY2d at 231 n 4). Whereas Michigan v Long functioned on the assumption that a suspect may, following release, “reenter his automobile, and he will then have access to any weapons inside” (463 US at 1052), this Court unequivocally rejected such a justification in Torres, in turn demanding the presence of an articulable threat.
Inasmuch as Torres set the rule departing from the federal standard, it also laid the groundwork for the exception to the rule. In Torres, we were careful to note that where “facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers’ safety’ the police may take further steps to protect themselves (Torres, 74 NY2d at 231 n 4).
In People v Carvey (89 NY2d 707 [1997]), we successfully employed this rationale to justify a limited search. We also clarified that in order for there to be an “actual and specific” danger, there must be a “substantial” “likelihood of a weapon in the car” (Carvey, 89 NY2d at 711). There, police officers stopped an automobile because it was missing a license plate. After stopping the vehicle, one officer observed that the passenger in the rear seat was wearing a bulletproof vest. He also observed the individual place something under his seat. The officers ordered the occupants out of the vehicle, patted them down and searched the area where defendant was seated. They recovered a gun. The search was ultimately upheld on the basis that there was an “actual and specific” danger to officer safety justifying the limited search.
The crucial distinction between the constitutional search in Carvey and the unconstitutional search in Torres is found in the heightened sense of danger and imminent harm, present in Carvey, arising directly from the existence and discovery of an article “immediately associated with the presence and use of a firearm” (Carvey, 89 NY2d at 712). Specifically, the bulletproof vest observed in Carvey is an article so readily associated with and inextricably linked to imminent gunplay, that the likelihood that its owner would be armed and, moreover, ready and willing to use a weapon, created an actual and specific risk *62 justifying police intrusion into the vehicle to search specifically for the weapon. The nature of the bulletproof vest gave rise to this immediate, articulable threat.
Not all objects or bizarre behavior, however, create such a concrete and irrefutable awareness necessitating immediate police action. Similar to a bulletproof vest, lawful discovery of bullets may also create a heightened level of suspicion justifying police intrusion into a vehicle. Bullets, like a vest, give rise to their “owner’s readiness and willingness to use a deadly weapon” (see Carvey, 89 NY2d at 712 [emphasis in original]). While the nature of articles such as a bulletproof vest and bullets may justifiably heighten officer suspicions, other objects, also directly related to and associated with arms, yet failing to indicate an immediate and prompt use of weaponry, do not give rise to an actual and specific threat necessary to justify police intrusion (see id. at 711). Hence, not all objects associated with the general use of guns — such as a holster or a practice target — are indicative of the presence of a deadly weapon (Carvey, 89 NY2d at 711: see also People v Ellis, 62 NY2d 393, 397 [1984]; People v Johnson, 54 NY2d 958, 959 [1981]). Such objects fail to convey the requisite sense of imminence or “readiness” that served as the basis for the “actual and specific” threat present in Carvey.
So, where there is a substantial likelihood that a weapon is present in a vehicle, thereby giving rise to an “actual and specific” danger to officer safety, a limited police search is justified (see Carvey, 89 NY2d at 710-711). The exception, therefore, is consistent with the logic underlying the general rule requiring an actual or articulable threat and a substantial likelihood that a weapon is in the vehicle, prior to intrusion, as opposed to some mere hypothetical or theoretical threat.
The effect of the majority’s decision here is to broaden the Carvey exception to the extent that it consumes the rule. Here the majority finds an “actual and specific” threat based on the suspects’ unusual behavior and furtive movements. Despite the isolation of the suspects, outside of the vehicle without incident, and the officers’ failure to testify that they “perceived any danger to themselves from a weapon in the automobile” (286 AD2d 592, 596 [Rosenberger, J., dissenting] [1st Dept 2001]), the majority believes that an actual and specific threat nevertheless existed. In adopting this view the majority ignores a significant and necessarily crucial portion of our former analysis, namely the requirement of a substantial likelihood that a weapon be present in the vehicle. Consequently, the record *63 does not support a finding of an actual and specific threat to officer safety.
Clearly the behavior of the defendant and his companions here was highly unusual and inherently suspicious, justifying the initial stop and inquiry. Their curious behavior, however, does not indicate a willingness, nor a readiness, to act violently against the police. Moreover, the majority does not articulate how this erratic and unusual behavior is evidence of a substantial likelihood that defendant was armed and “read[y] to use an available firearm” (Carvey, 89 NY2d at 709). Therefore, despite the defendant’s furtive movements, the threat, if any, was neither actual nor specific.
The newly announced majority standard fails to comport with the protections afforded by our State Constitution (NY Const, art I, § 12). Both Torres and Carvey rejected as inconsistent with our State Constitution the federal approach permitting automatic protective searches by the police after a vehicle has been lawfully stopped and the occupants removed and frisked. We carefully affirmed in Torres, and reaffirmed in Carvey, our policy of embracing a rule that provides greater protections to our citizenry under our State Constitution. The majority’s holding is a departure from this standard.
Therefore, because the record lacks any showing which would indicate a substantial likelihood that a weapon was present in the vehicle, or that an “actual and specific” danger to the police existed, the limited intrusion into the vehicle was not justified. Thus, the search was unlawful and, accordingly, the fruits of the unconstitutional search should be suppressed.
Judges Smith, Levine, Rosenblatt and Graffeo concur with Judge Wesley; Judge Ciparick dissents and votes to reverse in a separate opinion in which Chief Judge Kaye concurs.
Order affirmed.