This memorandum is uncorrected and subject to revision before publication in the New York Reports.
---------------------------------------------------------------

No. 49
The People &c.,
                    Respondent,
            v
Stanley Hardee,
                    Appellant.

                Rachel T. Goldberg, for appellant.
                Jessica Olive, for respondent.

MEMORANDUM:

        The order of the Appellate Division should be affirmed.

        The issue whether "the likelihood of a weapon in [defendant's] car [was] substantial and the danger to the . . . safety [of the officers who stopped that vehicle was] 'actual and specific'" (People v Carvey, 89 NY2d 707, 711 [1997], quoting

- 1 -

People v Torres, 74 NY2d 224, 231 n 4 [1989]) presents a mixed

question of law and fact (see People v Omowale, 18 NY3d 825, 827

[2011]).  Here, there is record support for the determination

that those circumstances existed and justified the limited search

of the interior of that vehicle (see People v Mundo, 99 NY2d 55,

57-59 [2002]; see also Omowale, 18 NY3d at 827, affg 83 AD3d 614,

616-617 [1st Dept 2011]).  Consequently, defendant's challenge to

the denial of his suppression motion is beyond this Court's

further review (see generally People v McBride, 14 NY3d 440, 448

[2010], cert denied 562 US 931 [2010]).  Defendant's remaining

contention is not preserved for appellate review (see CPL 470.05

[2]; People v Hawkins, 11 NY3d 484, 491-493 [2008]).

People v Stanley Hardee

No. 49

STEIN, J.(dissenting):

"[W]here the facts are disputed, where credibility is at issue or where reasonable minds may differ as to the inference to be drawn from the established facts, this [C]ourt, absent an error of law, will not disturb the findings of the Appellate Division and the suppression court" (People v McRay, 51 NY2d 594, 601 [1980]).  Conversely, where the issue presented is whether the People have demonstrated "the minimum showing necessary" to establish the legality of police conduct, "a question of law is presented for [our] review" (id.; see e.g. People v Gonzalez, 25 NY3d 1100, 1101 [2015]).

Accepting the facts as found by the Appellate Division and the suppression court, which are not disputed here, the People failed to adduce the minimum showing required to justify a protective search of defendant's vehicle -- namely, a substantial likelihood of the presence of a weapon and an actual and specific threat to officer safety.  I, therefore, disagree with the majority's conclusion that the question of whether the protective search was lawful is a mixed question of law and fact reviewable only for record support, and I would hold that the search of defendant's vehicle was unlawful.

- 1 -

I.

Defendant was convicted, upon his guilty plea, of criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]).  Prior to his plea, defendant sought suppression of the firearm found in his vehicle, following a traffic stop, on the basis that it had been discovered during an illegal search.

The following facts were elicited from two police officers at the suppression hearing.  Three police officers patrolling Lexington Avenue, in Manhattan, observed a grey sedan traveling approximately 20 miles per hour over the speed limit and changing lanes without signaling.  The officers pursued the sedan and, when they pulled behind it and activated the lights and sirens on their vehicle, the sedan immediately pulled over. Two officers approached the driver's side of the sedan, while the third officer approached the front passenger door.

Defendant was driving the vehicle and his fiancé was seated in the front passenger seat.  Defendant appeared nervous and he admitted to the officers that there was alcohol in two cups in the center console.  During his interaction with the officers, defendant appeared "hyper," but there was no other evidence of drug use or intoxication.  In addition to looking around the vehicle at the officers and at his fiancé, defendant looked over his shoulder toward the back seat of the vehicle a few times.  The officers requested that defendant exit the

vehicle; although he initially shook his head and refused, he peacefully exited the vehicle the second or third time he was asked.

Once defendant was outside the vehicle, one of the officers inquired if defendant had any weapons in his possession and frisked his person. Although he still appeared nervous, defendant was cooperative during the frisk, which did not reveal any weapons. One of the officers then directed defendant to place his hands in his pockets and walk to the rear bumper of the vehicle. Defendant complied, with the two officers on his side of the vehicle accompanying him. While he was standing at the bumper, defendant looked over his shoulder a couple of times toward the car, against the officers' directions. The officers decided to handcuff defendant, and placed one handcuff on him before defendant allegedly "started resisting" by "tens[ing] up."

Meanwhile, as the two officers escorted defendant to the rear of the vehicle, the third officer at the passenger door requested that defendant's fiancé -- who had thus far remained calm and courteous in the vehicle -- step out of the car, and he directed her to the rear bumper of the vehicle, as well. After she complied, the officer returned to the front passenger door, entered the vehicle with his flashlight, and leaned over into the back seat compartment to look in a maroon shopping bag located on the floor. According to the officer, he believed that defendant had been looking at the bag when defendant had glanced over his

shoulder while still in the car.  The officer picked up the bag, tugged on the handles to open it, and saw that it contained a firearm secreted inside a smaller black bag.  When he turned to signal his discovery to his fellow officers, he saw, for the first time, that the other officers were attempting to handcuff defendant.  The officer left the gun in the car, and helped to secure defendant.

Defendant argued that, based on the foregoing facts, suppression was required because the gun was found during a warrantless search conducted without probable cause, and there was no basis for a protective search of the vehicle.  In response, the People asserted that a limited protective search of the vehicle was justified based on defendant's behavior.  Supreme Court denied suppression of the gun on the ground that the officers had a reasonable belief that there was a weapon in the vehicle that presented an actual and specific danger to their safety.  Defendant's subsequent motion for reargument was denied. Thereafter, defendant pleaded guilty to criminal possession of a weapon in the second degree.

Upon defendant's appeal, the Appellate Division affirmed the judgment of conviction, with one Justice dissenting (126 AD3d 626 [1st Dept 2015]).  The majority held, as relevant here, that "defendant's actions both inside and outside of the vehicle created a 'perceptible risk' and supported a reasonable conclusion that a weapon that posed an actual and specific danger

to their safety was secreted" in the vehicle (id. at 628, quoting People v Mundo, 99 NY2d 55, 59 [2002]).  The dissenting Justice disagreed, and would have held that defendant was entitled to suppression of the weapon because the evidence of his nervousness, glances into the back seat, and momentary failure to comply with the officers' directives to exit the vehicle was "not sufficient to lead to a reasonable conclusion that a weapon located within the car presented an actual and specific danger to the officers' safety so as to justify a limited search of the car after defendant had been removed from the car and frisked without incident" (id.).  The dissenting Justice granted defendant leave to appeal to this Court.

## II.

"[T]he use of a vehicle upon a public way does not effect a complete surrender of any objectively reasonable, socially acceptable privacy expectation" (People v Weaver, 12 NY3d 433, 444 [2009]).  "A police officer's entry into a citizen's automobile and his [or her] inspection of personal effects located within are significant encroachments upon that citizen's privacy interests" (People v Torres, 74 NY2d 224, 229-230 [1989]).  Thus, "such intrusions must be both justified in their inception and reasonably related in scope and intensity to the circumstances which rendered their initiation permissible" (id. at 230; see People v Moore, 6 NY3d 496, 498 [2006]).

It is settled that, "absent probable cause, it is

unlawful for a police officer to invade the interior of a stopped vehicle once the suspects have been removed and patted down without incident, as any immediate threat to the officers' safety has consequently been eliminated" (Mundo, 99 NY2d at 58). An exception to this rule provides for a limited protective search of the vehicle for weapons where "facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety" (Torres, 74 NY2d at 231 n 4). "[I]n order for there to be an 'actual and specific' danger, there must be a 'substantial' 'likelihood of a weapon in the car'" (Mundo, 99 NY2d at 61, quoting People v Carvey, 89 NY2d 707, 711 [1997]).

We have reviewed the parameters of this exception in several cases. In People v Torres, the police received a telephone tip from an anonymous caller indicating that the defendant, who was wanted on homicide charges, could be found at a specific location and that he was carrying a weapon in a bag (74 NY2d at 226). Police officers observed the defendant enter his car at the location provided by the tip, carrying a nylon shoulder bag. Officers approached the vehicle, ordered the defendant and passenger out of the car, frisked them, then reached into the car to retrieve the shoulder bag; a search of the bag revealed a firearm and ammunition. We held that the officer's entry into the vehicle to retrieve the bag was unlawful

because, at the time of the search, "the suspects had already been removed from the car" and "patted down without incident" (id. at 230). In so holding, we rejected the People's reliance on the theoretical possibility that the suspects may have re-entered the vehicle after completion of the stop and threatened the departing police officers' safety (see generally Michigan v Long, 463 US 1032, 1051-1052 [1983]). Further, while we acknowledged that the officers "may have had a reasonable basis for suspecting the presence of a gun," we observed that, in light of the suspect's isolation from the interior of the vehicle during the questioning by the police, "[a]ny residual fear that the detectives might have had about the suspects' ability to break away and retrieve the [firearm] could have been eliminated by taking the far less intrusive step of asking the suspects to move away from the vicinity of the car" (Torres, 74 NY2d at 230).

Subsequently, in People v Carvey, we upheld as lawful a limited protective search following a traffic stop where, after the defendant had been removed from the vehicle and patted down, it was determined that he was wearing a bulletproof vest (see 89 NY2d at 708). We distinguished Torres by observing that the bulletproof vest was "uniquely indicative of [the defendant's] present readiness to use an available firearm," and held that the vest, "when coupled with the police observation of defendant furtively placing something beneath his seat, warranted the conclusion that a weapon located in the vehicle presented an

actual and specific threat to the officers' safety" (id. at 709).

Although the search in Carvey was determined to be justified

under those circumstances, we explained that the exception

articulated in Torres is a "narrow" one to be applied only where

"the likelihood of a weapon in the car [is] substantial and the

danger to the officer's safety 'actual and specific'" (id. at

710-711).  We also strongly emphasized that a reasonable

suspicion of the presence of a weapon, alone, "will not suffice,"

underscoring that such suspicion must be coupled with specific

facts indicating an actual threat to officer safety (id. at 711),

and that, otherwise, the general rule that probable cause is

required for such an intrusion applies.

In People v Mundo, we again reaffirmed the rule in

Torres that probable cause is required for even a limited search

of a vehicle absent an actual and specific threat to officer

safety (see 99 NY2d at 60-61).  In that case, when two police

officers attempted to pull over a vehicle in which the defendant

was a passenger, it was necessary for them to give chase three

times before the vehicle fully complied with the directive to

stop (see id. at 57).  During the third pursuit, the vehicle

almost struck a pedestrian, and the officers saw the defendant

turn around, face them, and then make furtive movements

indicating that he was secreting something (see id.).  After the

vehicle was finally stopped, the occupants were removed and

patted down; one officer pulled down the trunk divider in the

back seat, where the defendant had been seen hiding something, and discovered a stash of drugs (see id.). We affirmed the denial of the defendant's suppression motion only in light of "[t]he blatant disregard of the officers' directions, [and] the obvious lack of concern for the safety of others[] [which,] in addition to defendant's suspicious acts, created a perceptible risk to the officers that a weapon located within the vehicle would be a specific danger to their safety" (Mundo, 99 NY2d at 59). Likewise, we found record support for a protective search in People v Omowale based on the defendant driver's failure to immediately stop the vehicle, the police officers' observations of the passenger secreting something in the center console after he saw them and, significantly, movements by the passenger toward that same center console (where a handgun was found) as the police officers approached (see 83 AD3d 614, 617 [1st Dept 2011], affd 18 NY3d 825 [2011]).

## III.

Undoubtedly, when faced with nervousness and furtive movements or glances, it may be difficult for police officers to determine whether suspicious behavior is merely ordinary nervousness related to police encounters, indicates the presence of a weapon, or suggests the existence of some other contraband of which defendant fears detection. Given "the reality of the day, including the risks faced by police officers in street encounters in the course of discharging their official duties"

(Torres, 74 NY2d at 231), I do not suggest that the rule governing protective searches requires that a suspect actually retrieve or attempt to retrieve a weapon before an officer's fear of an actual and specific threat will be deemed justified. Nevertheless, to justify a protective search, our precedent requires a demonstration of some objective facts that support a belief that the defendant or other occupants of the vehicle present a danger to officer safety because they may access a weapon in the vehicle.  Indeed, this critical element is the very basis for allowing a warrantless protective search without probable cause, and its absence here is clearly illustrated by a comparison of the facts of this case with those presented in Carvey, Mundo, and Omowale.

In Carvey, the bulletproof vest, combined with the defendant's act of furtively placing something under his seat -- which implied that the gun was previously held at ready -- was sufficient to justify the protective search because it suggested "more than the presence of a deadly weapon -- it demonstrate[d] [the defendant's] readiness and willingness to use a deadly weapon" (89 NY2d at 712).  In Mundo, the failure of the driver to stop the vehicle and the repeated attempts to evade the police, which resulted in a near collision with a pedestrian, demonstrated a willingness to endanger the safety of others (see 99 NY2d at 57).  Taken together with the defendant's furtive movements of secreting an object in the back seat -- which again

indicated that the hidden item had been held at the ready -- we upheld the denial of the defendant's suppression motion, based on the officers' objectively reasonable concern that any weapon in the vehicle presented an actual and specific safety threat to them (see id. at 59). Finally, in Omowale, the defendant's failure to stop the vehicle, coupled with the passenger's movements of secreting an object in the center console upon seeing the police and act of moving towards that same spot as the officers approached -- a movement that would make little sense had some other type of contraband been hidden away -- provided a reasonable basis for the protective search (18 NY3d at 825).

Here, by contrast, no facts elicited at the hearing established that, at the time of the search, defendant had displayed any behavior that would give rise to a belief that a weapon located in the vehicle presented an actual and specific danger to the safety of the officers. Thus, this case is indistinguishable from Torres, where the officers may reasonably have suspected the presence of a weapon, but there were no facts indicating an actual and specific threat to their safety once defendant was outside the vehicle, frisked, and moved away from the interior of the car (74 NY2d at 227). That is, even assuming that there was a reasonable basis to believe that there was a weapon in the car -- a factor which I do not concede is satisfied here -- there is no record support for a finding that a protective search was justified.

Defendant did not evade the police vehicle and immediately complied with the officers' signals to pull over (compare Omowale, 18 NY3d at 825; Mundo, 99 NY2d at 58). We have previously cautioned, in the context of the narrow exception allowing for warrantless protective searches, that "[a] motorist who exceeds the speed limit does not thereby indicate any propensity for violence or iniquity, and the officer who stops the speeder has not even the slightest cause for thinking that he is in danger of being assaulted" (People v Marsh, 20 NY2d 98, 101 [1967]). Here, there was no testimony that defendant's manner of driving was unusual for a major four-lane avenue in Manhattan, or that any specific pedestrians or motorists were endangered thereby (compare Mundo, 99 NY2d at 59). In any event, to the extent that defendant's driving exhibited a disregard for the safety of others in the abstract and was sufficient to justify a traffic stop, such conduct did not justify a belief that the presence of a weapon posed an actual and specific threat to officer safety. It, therefore, did not provide a lawful predicate for a protective search.

Nor was defendant's nervousness sufficient to justify a protective search (cf. People v Garcia, 20 NY3d 317, 320 [2012]; People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 US 868 [1995]). Significantly, defendant did not move towards the back seat to secrete an object, or move towards the bag or any other area of the vehicle to retrieve anything, either before or after

the officers approached (compare Omowale 18 NY3d at 825; Mundo, 99 NY2d at 57; Carvey, 89 NY2d at 709-710).  In fact, the officers conceded that defendant was honest about having alcohol in the vehicle and made no attempt to hide it.  Although he briefly refused to exit the vehicle, he apparently did so without hostility and he then peacefully complied with that directive, as well as with the subsequent frisk and the officers' request that he move to the rear bumper of the vehicle.  It cannot reasonably be disputed that, up to that point, none of defendant's behavior provided an objective basis for a reasonable belief that a weapon located in the vehicle from which defendant had been isolated presented an "actual and specific danger to the officers' safety" (Torres, 74 NY2d at 231 n 4) and, therefore, no search was justified.

Finally, defendant's subsequent resistance to being handcuffed at the rear bumper of the vehicle cannot be used to justify the protective search because the officer who conducted the search was admittedly unaware of any such resistance when he began the search.  It is beyond cavil that a search must be justified at the time it is commenced (see Torres, 74 NY2d at 230), and "[d]efendant's later conduct cannot validate an encounter that was not justified at its inception" (Moore, 6 NY3d at 498).  Accordingly, as in Torres, the appropriate action to address any residual fear experienced by the officers would have been "the far less intrusive step of asking [defendant] to move

[further] away from the vicinity of the car," not a search of the vehicle after both of its occupants had already been removed, and defendant had been patted down, without incident (74 NY2d at 230).

### IV.

In short, the majority ignores the distinction we have always drawn between Torres and those cases in which we have upheld protective searches -- namely, the requirement of an actual and specific threat to officer safety from a weapon located in the vehicle. Furthermore, the majority's ruling disregards the narrowness of the warrant exception as articulated in, and demonstrated by, our prior case law, and it unduly broadens the exception for a protective search beyond its purpose and rationale. In the absence of any record facts supporting the majority's conclusion that there was a substantial likelihood of a weapon in the vehicle that presented an actual and specific threat to the officers, Torres controls and the firearm should have been suppressed (see 74 NY2d at 230). I, therefore, dissent.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed, in a memorandum. Chief Judge DiFiore and Judges Fahey, Garcia and Feinman concur. Judge Stein dissents in an opinion, in which Judges Rivera and Wilson concur.

Decided November 16, 2017