■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CHARLES FLUDD, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAMON MARACALLO, Respondent. [799 NYS2d 47]—

Order, Supreme Court, Bronx County (Harold Silverman, J.), entered March 1, 2004, which granted defendants' motions to suppress physical evidence, unanimously reversed, on the law, the motion denied and the matter remanded for further proceedings.

Defendants were arrested and indicted for two counts of criminal possession of a weapon in the third degree. At a pretrial suppression hearing, Detectives Daniel Kelly and John Mele testified that on September 28, 2002, at approximately 6:30 P.M., they were conducting a narcotics patrol in the area of Jerome Avenue. Kelly recounted that they were in plainclothes and driving an unmarked car when a red Honda traveling at an excessive speed cut them off. Kelly testified that this caused him to slam on his brakes to avoid an accident. Both detectives stated that they followed the Honda for two blocks until it came to a stop. Kelly said that, shields displayed, he approached the driver's side of the vehicle while Mele approached the passenger side. Defendant Maracallo was in the driver's seat, and defendant Fludd was sitting in the back of the car on the passenger's side.

Detective Kelly asked Maracallo for a driver's license. Maracallo responded that "he had one, but he didn't have it with him." However, Maracallo gave Kelly the car's registration. Twice, Kelly ordered the defendants to keep their hands where he could see them. He related that he specifically told

Maracallo to keep his hands on the dashboard and that he told Fludd to keep his hands on the headrest of the seat in front of him. Both detectives testified that defendants defied their directives and moved their hands. Both detectives noticed Fludd furtively sliding something under a pile of clothing or laundry in the backseat. Kelly testified that he could see Fludd's hands, but not what was in them. Mele, however, testified that Fludd appeared to be secreting a box beneath the clothing.

Defendants were told to get out of the car and place their hands against it. They complied and were frisked. Nothing was recovered. Kelly testified that he was afraid that Fludd had placed a weapon under the clothing. He then went to that specific area of the backseat and retrieved a cigar box. Kelly recounted that he felt the box, and it was too heavy to contain just cigars. He stated that he opened the box and found a loaded firearm. Defendants were arrested. Mele testified that he conducted an inventory search of the vehicle at the precinct, recovering another firearm.

Defendants did not present any evidence at the suppression hearing but did make written submissions. The court granted defendants' motion. We reverse.

It is conceded that the stop and frisk of the two defendants was lawful. Thus, the question is whether the detectives could, after defendants were out of the car, search the area under the laundry, remove the cigar box, and open it.

In 1989, the Court of Appeals ruled in *People v Torres* (74 NY2d 224 [1989]) that once the suspects were removed from a car and frisked without incident, there was, as a matter of law, no probable cause to search closed containers within the car's passenger compartment for a weapon (at 230-231). In so deciding, the Court explained that it was departing from federal precedent (*Michigan v Long*, 463 US 1032 [1983]) and interpreting article 1, § 12 of the New York Constitution more broadly than the Fourth Amendment of the United States Constitution (at 227-229).

However, even the *Torres* court recognized the broad sweep of its ruling, and that there should be exceptions to it. The Court of Appeals wrote: "[T]here may well be circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety sufficient to justify a further intrusion, notwithstanding the suspect's inability to gain immediate access to that weapon." (74 NY2d at 231 n 4.) Since the *Torres* ruling there have been

numerous occasions when this exception has been invoked if specific facts were present which elevated police officers' fear for their safety (see *People v Carvey*, 89 NY2d 707, 712 [1997] [limited search under seat justified where suspect was wearing a bulletproof vest and observed bending down hiding something as police approached]; *People v Vehap*, 234 AD2d 210, 211 [1996], *lv denied* 90 NY2d 865 [1997] [officers' fears heightened by defendant's jittery conduct outside vehicle and repeated noncompliance with officer's direction to keep his hands on roof of car]; *People v Anderson*, 17 AD3d 166 [2005] [fear heightened by defendant's refusal to answer question as to whether he had a weapon justified opening car's console, where defendant had been seen trying to adjust something]).

One such case was *People v Mundo* (99 NY2d 55 [2002]). The facts of that case are strikingly similar to those presented here: "The police attempted to stop [defendant's] vehicle only to have defendant and his cohorts twice disobey the officers' lawful commands . . . [and] the police observed defendant attempting to stash something in the middle area of the rear seat" (*id.* at 59).

In *Mundo*, the Court of Appeals held: "The blatant disregard of the officers' directions, the obvious lack of concern for the safety of others, in addition to defendant's suspicious acts, created a perceptible risk to the officers that a weapon located within the vehicle would be a specific danger to their safety. The limited police intrusion in that area within the vehicle where the furtive movements had been seen was therefore justified" (*Mundo* at 59 [2002] [citations omitted]).

Just as in *Mundo*, defendants' actions in this case prior to the frisk were such that the detectives perceived a heightened risk, and they reasonably feared for their safety. While defendants were cooperative with the police after being removed from the vehicle, their earlier actions were not benign. Defendants were driving at an excessive speed and cut off the car in which the detectives were riding. Twice, both defendants had to be directed to keep their hands where they could be seen. Fludd twice dropped his hands and moved something under a pile of laundry. These acts, given the totality of the circumstances, were a sufficient predicate for Detective Kelly's limited intrusion into the car, which was appropriately circumscribed to the specific area where Fludd put his hands. Thus the detective's removal of the cigar box from beneath the laundry was proper, as was his opening of it. Once in his hands, it was clear to Detective Kelly that there was more than just cigars in the box. Because the search of the cigar box was lawful, there was prob-

able cause for the suspects' arrest, and the weapon recovered during the ensuing inventory search was legally obtained. Concur—Tom, J.P., Mazzarelli, Marlow, Nardelli and Sweeny, JJ.