■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EARL AUSTIN HUTCHINSON, HWESU HUTCHINSON, JAMIE DEFREITAS AND PETER MCPHERSON, et al., Respondents. [804 NYS2d 341]—

Appeal by the People from an order of the Supreme Court, Nassau County (Ort, J.), entered April 26, 2004, which, after a hearing, granted those branches of the omnibus motions of the defendants Earl Austin Hutchinson and Jamie DeFreitas which were to suppress physical evidence and statements to law enforcement officials, and those branches of the omnibus motions of the defendants Hwesu Hutchinson and Peter McPherson which were to suppress physical evidence.

Ordered that the order is reversed, on the law, those branches of the omnibus motions of the defendants Earl Austin Hutchinson and Jamie DeFreitas which were to suppress physical evidence and statements to law enforcement officials, and those branches of the omnibus motions of the defendants Hwesu Hutchinson and Peter McPherson which were to suppress physical evidence, are denied, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings on the indictment.

On December 30, 2002, at approximately 4:15 A.M., Police Officer Richard Ierardi was alone on patrol when he observed a vehicle proceeding at an estimated speed of 50 miles per hour in a 30-mile-per-hour zone. Thereafter, Ierardi observed the vehicle make a wide turn and cross over into the oncoming lane of traffic. At this point, Ierardi activated the emergency lights and pulled the vehicle over.

As Ierardi approached the vehicle, he observed the defendants Earl Austin Hutchinson and Jamie DeFreitas, who were seated in the back seat, place a black coat over them as if they were attempting "to hide themselves." Ierardi asked the defendant Hwesu Hutchinson, who was the driver of the vehicle, to produce his licence, insurance identification card, and registration. During this time, Earl Austin Hutchinson and Jamie DeFreitas kept hiding their hands under the jacket and appeared to be "going toward the middle of the vehicle center." Ierardi repeatedly asked them to display their hands. Meanwhile, Hwesu Hutchinson appeared "very nervous," began to sweat, and took a long time to produce the papers. After Ierardi obtained the papers, he returned to his patrol car and called for assistance.

Shortly thereafter, Police Officer Joseph Grella and Police Officer Marsh arrived at the scene. Ierardi smelled "an odor of alcoholic beverage coming from the vehicle." He asked Hwesu Hutchinson to exit the vehicle and performed a sobriety test. As the test was being performed, Earl Austin Hutchinson and Jamie DeFreitas continued to reach toward the middle of the car with their hands. Grella also repeatedly told them to keep their hands visible.

After the defendant Hwesu Hutchinson returned to the vehicle, Ierardi asked him if there was "anything illegal" inside the vehicle. Hwesu Hutchinson turned his head and looked toward the armrest of the backseat. At this point, the officers ordered all four defendants to exit the vehicle and patted them down. Nothing was recovered from their persons.

The officers then entered the rear of the vehicle. Ierardi found a "loaded firearm" inside the "ajar" armrest in the middle of the back seat. A search of Hwesu Hutchinson's jacket pocket revealed marijuana and a search of Earl Austin Hutchinson revealed a counterfeit $20 bill. At the precinct, Earl Austin Hutchinson and Jamie DeFreitas gave statements to law enforcement officials.

Grella testified that before searching the vehicle, he "felt" that there was a weapon inside the vehicle and was concerned for his safety. He noted that the police were "outnumbered" by the occupants of the defendants' vehicle. Grella also stated that Earl Austin Hutchinson was continuously looking at him. Grella thought that he was being "targeted" by Earl Austin Hutchinson. Ierardi was also concerned for his safety and the safety of his fellow officers.

Following a hearing, the Supreme Court suppressed the physical evidence and the statements made to law enforcement officials. We reverse.

"A police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his [or her] own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself [or herself] from harm" (*People v Torres*, 74 NY2d 224, 226 [1989]). "[T]here may well be circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety sufficient to justify a further intrusion, notwithstanding the suspect's inability to gain immediate access to that weapon" (*id.* at 231, n 4). Such circumstances were present here.

The evidence established that the police officers "could reasonably have concluded that 'a weapon located within the vehicle present[ed] an actual and specific danger' to their safety," justifying a limited protective search in the area of the car where the furtive movements were seen (*People v Mundo*, 99 NY2d 55, 59 [2002], quoting *People v Carvey*, 89 NY2d 707, 712 [1997]; *People v Cheek*, 18 AD3d 475, 476 [2005], *lv denied* 5 NY3d 786

[2005]; *People v Anderson*, 17 AD3d 166 [2005]; *People v March*, 257 AD2d 631, 633 [1999]; *People v Cisnero*, 226 AD2d 279, 280 [1996]; *cf. People v Torres, supra).* The police action was justified by the totality of the testifying officers' observations, including the fact that Earl Austin Hutchinson and Jamie DeFreitas pulled a black coat over themselves as if they were attempting "to hide," repeatedly disobeyed the officers' commands to keep their hands visible, and appeared to be "going toward the middle of the vehicle center" (*see People v Fludd*, 20 AD3d 351 [2005]). Further, when asked if there was something illegal in the vehicle, Hwesu Hutchinson replied by turning his head towards the armrest of the back seat. The blatant disregard of the officers' directions and the defendants' suspicious actions "created a perceptible risk to the officers that a weapon located within the vehicle would be a specific danger to their safety" (*People v Mundo, supra* at 59).

Accordingly, the Supreme Court erred in suppressing physical evidence and the statements made to law enforcement officials. Adams, J.P., Ritter, Mastro and Rivera, JJ., concur.