THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AKINLOWO OMOWALE, Appellant. [923 NYS2d 442]—

Judgment, Supreme Court, New York County (Bonnie G. Wittner, J.), rendered May 13, 2008, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree and sentencing him as a second violent felony offender, to a term of seven years with five years' postrelease supervision, affirmed. Judgment, Supreme Court, New York County (Edward J. McLaughlin, J., at hearing; Bonnie G. Wittner, J., at plea and sentencing), rendered May 13, 2008, convicting defendant of criminal possession of a controlled substance in the first degree and criminal possession of a weapon in the second degree and sentencing him, as a second felony drug offender whose prior felony drug conviction was a violent felony, to concurrent terms of 15 years and seven years, respectively, with five years' postrelease supervision, reversed, on the law, the motion to suppress physical evidence granted, and the indictment dismissed.

Defendant appeals from Supreme Court's denial of two motions to suppress physical evidence seized in the course of automobile stops that occurred on September 17, 2006 and May 5, 2007.

### The 2006 Encounter

At the time of the 2006 encounter, New York City Police

Sergeant Siani and Officers Lugo and Thorn were riding in an unmarked patrol car wearing civilian clothes. At West 135th Street, the patrol car was stopped at a red light in the right lane and slightly behind a Cadillac Escalade being operated by defendant and stopped in the left lane. The Escalade's front-seat passenger, later identified as Devon Greene, looked toward the officers making eye contact with Siani in a way that gave Siani the impression that Greene recognized him and his colleagues to be police officers. Greene then turned his shoulder as if placing something in the Escalade's center console. When the light turned green, defendant made a right turn from the left lane, cutting in front of the patrol car without signaling. The officers activated the patrol car's emergency lights and siren but the Escalade did not immediately stop moving. Using the patrol car's loudspeaker, Siani directed defendant to pull the Escalade over several times. Defendant finally did so between West 133rd and 134th Streets.

As the officers approached the Escalade on foot, Thorn, who was on the passenger's side, saw Greene leaning over the Escalade's center console. Siani had Greene step out of the Escalade, frisked him and found no weapon. Siani was nevertheless concerned that a weapon or weapons might be in the car because it appeared to him that Greene had put something in the center console. Accordingly, defendant, Greene and the three other occupants of the Escalade were directed to the back of the vehicle. Siani then went to the front to see what, if anything, had been placed in the center console before allowing the occupants to reenter the Escalade. Siani opened the console and found a pistol inside of it. Defendant and the other vehicle occupants were then arrested. After driving the Escalade to the precinct, the police officers found two more guns, a box of ammunition and a quantity of cocaine in the console. The police also recovered a bullet-resistant vest upon conducting an inventory search of the vehicle.

### The 2007 Encounter

The second automobile stop occurred eight months later while defendant was out on bail on the indictment stemming from the first incident. At the time of the 2007 encounter, Siani, Thorn and two other officers stopped a Nissan Maxima moments after seeing defendant sitting in the vehicle while it was double-parked. As the officers approached, defendant asked Thorn if he remembered him. Thorn directed defendant to step out of the car and immediately handcuffed him at Siani's direction. Once defendant was handcuffed, Siani recovered another person's

driver's license which defendant was holding along with a stack of cards and his own driver's license. Siani asked defendant to explain his possession of the other person's license. In response, defendant stated that it belonged to a friend who had left it at his house. During this encounter, defendant never assumed anyone else's identity or offered the other person's driver's license as his own. In fact, defendant was never even asked or directed to produce a driver's license at all. Nevertheless, Siani testified that defendant was arrested at the scene for "false impersonation" and taken to the precinct. Upon a post-arrest search of defendant's person, the police recovered approximately $3,000 and some cocaine. Siani then decided to search the Maxima for more drugs. During that search of the car, the officers found a hidden compartment from which they recovered a pistol, $14,000 in currency and approximately a pound of cocaine.

## Discussion of the 2006 Encounter

In denying the first motion to suppress physical evidence, the court found that at the time of the 2006 arrest the officers were justified in removing defendant from the Escalade and searching the vehicle's center console because they were acting under a reasonable fear for their safety. The motion court further concluded that the seizure of the additional contraband found in the Escalade after defendant's arrest was lawful. We agree. Defendant does not argue on this appeal that the Escalade was unlawfully stopped. He asserts that the search of the vehicle's center console was unlawful.

In *People v Carvey* (89 NY2d 707 [1997]), the Court of Appeals reiterated its holding in *People v Torres* (74 NY2d 224 [1989]) that "absent probable cause, it is unlawful for a police officer to invade the interior of a stopped car once the suspects have been removed and patted down without incident and any immediate threat to safety thereby eliminated" (*People v Carvey* at 710).[1] The *Torres* Court acknowledged an exception to the requirement of probable cause in that "[i]ndeed, there may well be circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered during

---

1. Citing NY Constitution, article I, § 12, the *Torres* Court rendered its decision on state constitutional grounds and declined to adopt the federal standard by which an intrusion into the passenger compartment of a suspect's vehicle may be justified "solely on the theory that 'if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and will then have access to any weapons inside' " (*People v Torres*, 74 NY2d at 226, quoting *Michigan v Long*, 463 US 1032, 1052 [1983]).

the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety sufficient to justify a further intrusion, notwithstanding the suspect's inability to gain immediate access to that weapon" (*People v Torres*, 74 NY2d at 231 n 4). "Any inquiry into the propriety of police conduct must weigh the degree of intrusion it entails against the precipitating and attending circumstances" out of which the encounter arose (*People v Salaman*, 71 NY2d 869, 870 [1988]; *People v De Bour*, 40 NY2d 210, 223 [1976]). The Court of Appeals applied the *Torres* exception to the requirement of probable cause in *People v Mundo* (99 NY2d 55 [2002]) after considering the precipitating and attending circumstances of a police-civilian encounter. Under the similar facts of *Mundo*, the police officers' attempt to stop the defendant's vehicle was thwarted when the defendant and his cohorts twice disobeyed the officers' lawful commands and the defendant was seen trying to stash something within the vehicle (*id.* at 59).

The combination of factors in this case is analogous to those in *Mundo* because it led to the justifiable conclusion that a weapon which could have been used to harm the officers was in the Escalade. The first factor is the eye contact that gave Siani the impression that Greene knew Siani and the other people in his vehicle were police officers.[2] The remaining relevant factors are (a) Greene's body movement that made it appear that he was placing something in the Escalade's center console while defendant was stopped at the red light, (b) the illegal right turn defendant made without signaling once Greene apparently perceived that Siani and his companions were police officers, (c) defendant's failure to timely pull the Escalade over after being directed to do so several times and (d) Greene's leaning over the Escalade's center console as the officers approached the vehicle on foot. Viewed in their totality, these factors gave rise to a sufficient predicate for Siani's very limited check of the Escalade's center console once defendant and his passengers were removed from the car. In *People v Fludd* (20 AD3d 351 [2005], *lv denied* 5 NY3d 852 [2005]), this Court similarly weighed the defendants' noncompliance with the police officers' directives together with an apparent effort to secrete something in the back seat of a car in finding a sufficient predicate for a limited search of the back seat. We do not take issue with the dissent's view that

---

2. Such eye contact may be weighed with other factors to determine whether there is a reasonably objective basis for police officers to fear for their safety (*see e.g. People v Anderson*, 17 AD3d 166 [2005]; *People v Worthy*, 261 AD2d 277 [1999], *lv denied* 93 NY2d 1029 [1999]).

there could have been innocent explanations for defendant's delay in stopping his vehicle or Greene's movements therein. We note however that innocent explanations for behavior do not prevent police officers from acting on their well-founded suspicions (*see People v Daye*, 194 AD2d 339, 340 [1993], *lv denied* 82 NY2d 716 [1993]). Because the search of the Escalade's console was lawful, there was probable cause for defendant's arrest and the contraband recovered during the ensuing inventory search was legally obtained.

### Discussion of the 2007 Encounter

Defendant's double-parking of the Maxima constituted a traffic infraction which gave the officers a basis for approaching the vehicle and requesting information (*see People v Citron*, 255 AD2d 452 [1998], *lv denied* 92 NY2d 1030 [1998]). This aspect of the appeal however turns on the propriety of defendant's arrest after the officers approached him in the street. In this regard, the motion court denied defendant's motion to suppress on the premise that "[h]e was arrestable for criminal impersonation as soon as the—somebody saw the license that he was about to hand [*sic*]." This was error. Pursuant to CPL 140.10 (1) (a) a police officer is authorized to arrest a person for any offense when he has "reasonable cause to believe that such person has committed such offense in his presence." As used in the statute, "reasonable cause" is equal to "probable cause" (*People v Johnson*, 66 NY2d 398, 402 n 2 [1985]), i.e., "information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed" (*People v McRay*, 51 NY2d 594, 602 [1980]).

A person commits criminal impersonation in the second degree when he or she "[i]mpersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another" (Penal Law § 190.25 [1]). There was no probable cause for defendant's arrest inasmuch as he did not offer the other person's driver's license as his own and he did not impersonate anyone. In fact, as noted above, the police never even asked defendant to produce a driver's license. The People's alternative argument that there was probable cause to arrest defendant for attempted criminal impersonation is not persuasive. An element of an attempt to commit a crime is "conduct which tends to effect the commission of such crime" (Penal Law § 110.00). Although it is likely that defendant considered passing the other driver's license off as his own, "[t]he law does not punish evil thoughts, nor does it generally consider mere prepa-

ration sufficiently dangerous to require legal intervention" (Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 110.00, at 93 [2009 ed]). Defendant's mere act of holding the driver's license in apparent preparation for a criminal impersonation does not constitute a punishable attempt (*see People v Horner*, 300 AD2d 841, 845 [2002]). The People's argument that there was a basis to arrest defendant for criminal possession of stolen property is equally unavailing. We so conclude because it does not appear from the record that the police learned that the driver's license had been reported lost until after defendant's arrest. We therefore find that defendant's arrest on the charge of criminal impersonation was unlawful and all of the physical evidence seized as a result of that arrest should be suppressed.

The People cite *People v Allen* (73 NY2d 378 [1989]) in support of their position that it was reasonable for the police to immediately handcuff defendant upon removing him from the Maxima. In *Allen,* the Court held that poor lighting conditions combined with a "reasonable belief that defendant might be armed, justified the limited use of handcuffs to prevent defendant from reaching for a concealed weapon" (*id.* at 380). This case is distinguishable because the police had no reason to believe that defendant possessed a weapon at the time of the 2007 encounter. To be sure, the People offered no evidence, for example, that defendant acted furtively, appeared to be reaching for a weapon or had any bulge under his clothing characteristic of a weapon (*see e.g. People v Mais*, 71 AD3d 1163, 1165 [2010], *lv denied* 15 NY3d 775 [2010]). Viewed in isolation, defendant's earlier arrest gave rise to a mere hunch, as opposed to a reasonable suspicion, that he was armed at the time of the 2007 encounter. We therefore find that the police officers' use of handcuffs constituted an unlawful forcible seizure under the circumstances of this case.

We have considered and rejected defendant's remaining arguments, including his claim that the police were required to provide *Miranda* warnings before questioning him about the driver's license (*see Berkemer v McCarty*, 468 US 420, 436-440 [1984]; *People v Bennett*, 70 NY2d 891 [1987]; *People v Huffman*, 41 NY2d 29 [1976]). Concur—Tom, J.P., Friedman and DeGrasse, JJ.

Freedman and Manzanet-Daniels, JJ., dissent in part in a memorandum by Freedman, J., as follows: I agree with the majority that defendant's motion to suppress physical evidence in connection with his 2007 encounter with the police should have been granted, but I believe that the motion to suppress in con-

nection with his 2006 encounter should have been granted as well.

With respect to the 2006 incident, I view the record, which the majority summarizes accurately, as insufficient to support Supreme Court's finding that the police officers were justified in searching the interior of defendant's Escalade after they had stopped the car for a traffic infraction, removed its occupants, frisked them, and isolated them at a distance from the vehicle. The rule in New York is that ordinarily, without probable cause, police officers cannot search the interior of a stopped car once they have removed its occupants and patted them down without incident (*see People v Carvey*, 89 NY2d 707, 710 [1997]). But as the majority notes, a narrow exception has been recognized where "following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety sufficient to justify a further intrusion, notwithstanding the suspect's inability to gain immediate access to that weapon." (*People v Torres*, 74 NY2d 224, 231 n 4 [1989]). In order for there to be an "actual and specific danger," there must be a "substantial" "likelihood of a weapon in the car" (*Carvey*, 89 NY2d at 711). A "theoretical" fear that a suspect may, following release, reenter the vehicle and gain access to a weapon inside it does not justify a search (*see Torres*, 74 NY2d at 231 n 4 [emphasis omitted]).

On the facts of this case, I conclude that the officers did not have the requisite "knowledge of some fact or circumstance that supports a reasonable suspicion that [defendant was] armed or pose[d] a threat to safety" (*People v Batista*, 88 NY2d 650, 654 [1996]). In fact, Sergeant Siani's testimony that the Escalade's passenger, Devon Greene, acted nervously because he somehow knew that Siani and his companions were police officers, even though they were driving an unmarked car and wearing plain clothes, seems entirely too speculative to be credited. Accordingly, the question whether the search was lawful is dependent on two circumstances: first, the Escalade's continued travel for a little more than one city block after the police had turned on their lights, siren, and loudspeaker; and second, Greene's upper-body movements, both before and after the Escalade stopped, which one officer, who could not see Greene's hands, stated that he thought meant that Greene was manipulating something in the center of the front seat.

I note that the Escalade's failure to stop immediately could be attributed to the driver's inattentiveness, and that Greene's

equivocal movements could be the result of any number of activities besides hiding a weapon. But based on these circumstances, I would have no difficulty with upholding a conclusion by the finder of fact that the police officers had reason to be suspicious of defendant and his companions. However, I cannot agree that these circumstances could reasonably lead the police to suspect that the Escalade's occupants, once removed from the vehicle, were a threat to the officers' safety. I note that, in cases involving similar circumstances, a perceived lack of the reasonable suspicion of danger that is required under *People v Torres* has occasioned vigorous dissenting opinions (*see People v Allen*, 42 AD3d 331, 332-335 [2007, McGuire, J., dissenting], *affd* 9 NY3d 1013 [2008]; *see also People v Mundo*, 99 NY2d 55, 59-63 [2002, Ciparick, J., and Kaye, Ch. J., dissenting]; *People v Mundo*, 286 AD2d 592, 594-596 [2001, Rosenberger, J., dissenting]).

The cases that the majority cites are distinguishable. In *People v Mundo* (99 NY2d 55 [2002], *supra*), the police observed a car make an illegal right turn at a red light and immediately activated their lights. The defendant's car stopped, but when the officers approached it on foot, it pulled away. The officers pursued the car and "[t]he stop and pursuit cycle repeated itself." During the third pursuit, the defendant's car nearly struck a pedestrian; the officers also observed defendant, seated in the back seat, turn, face them, and "make a movement as if he were hiding something." The Court of Appeals concluded that defendant's "furtive movements," when coupled with the car's "evasive actions," warranted a limited search of the vehicle (*id.* at 57). In this case, the Escalade did not evade the police car or otherwise engage in reckless flight from police officers and did not demonstrate a disregard for others' safety. While the circumstances in *Mundo* clearly demonstrated that the defendant sought both to evade apprehension and to conceal something from the police, the same cannot be said here.

In *People v Fludd* (20 AD3d 351 [2005], *lv denied* 5 NY3d 852 [2005]), a police car was cut off by the defendants' Honda driving at "an excessive speed" (*id.* at 351). When the Honda stopped after the police car followed it for two blocks, the occupants twice directly disobeyed the officer's order to keep their hands placed where he could see them, and instead one of the defendants furtively slid a box under a pile of clothing in the back seat. The police officers recovered the box, opened it, and found a loaded firearm. This Court found that the defendants' actions prior to their removal from their car were "not benign" and "were such that the detectives perceived a heightened risk,

and they reasonably feared for their safety" (id. at 353). Here, the actions of the Escalade's occupants were nonthreatening and they cooperated with the police once they were stopped.

For the reasons stated above, I would grant the motion to suppress in connection with the 2006 incident, vacate defendant's relevant guilty plea, and dismiss the relevant charges.