■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY HARDEE, Appellant. [5 NYS3d 430]—

Judgment, Supreme Court, New York County (Charles H. Solomon, J., at suppression hearing; Michael J. Obus, J., at plea and sentencing), rendered January 22, 2013, convicting

defendant of criminal possession of a weapon in the second degree, and sentencing him, as a persistent violent felony offender, to a term of 16 years to life, affirmed.

The officers lawfully stopped defendant's vehicle after they observed it speeding down Lexington Avenue, weaving in and out of traffic without signaling. When questioned while inside the vehicle, defendant kept looking at the back seat, prompting the officer who was addressing defendant to tell him to "concentrate on me."

Defendant was asked about Styrofoam cups in the center console, and one officer recalled defendant answering that there was a little bit of vodka in the cup. The officer testified that although defendant was told that the alcohol was not a big deal and that he should relax, defendant continued to move about and repeatedly looked in the back seat and at his front seat passenger.

When the officers asked defendant to stop moving around and to step out of the car, he did not comply until the request was repeated two or three times. Although a frisk of defendant did not reveal a weapon, he continued to look over his shoulder toward the area directly behind the front passenger seat, where a shopping bag in which a gun was later found was located. In addition, defendant disregarded the officers' warnings that he would be handcuffed if he did not comply with their directives. One officer testified that defendant's behavior led him to believe that defendant was either going to fight or flee, and that he should be handcuffed for all of the officers' safety. After allowing the officer to place one of the handcuffs on his right wrist, defendant began to resist and fight the officers.

Another officer testified that, based on his experience, he knew that the officer who frisked defendant was concerned that defendant was armed. He also testified that defendant's demeanor, persistent movements inside the vehicle, repeated looking into the back seat, and refusal to follow directives, led him to believe that there was a weapon inside the car, and that it might be in the bag he had observed on the floor behind the passenger seat in the area where defendant kept glancing. Accordingly, the officer conducted a very limited search, grabbing the bag. After sensing that the bag's heavy weight was consistent with a weapon, the officer looked inside and saw the handle of a semiautomatic weapon protruding from another, smaller bag. The officer yelled "gun" and then exited the vehicle to assist his fellow officers, who were still struggling to subdue defendant.

Preliminarily, there is no basis for disturbing the court's

finding that the officers who testified at the hearing were credible, which is fully supported by the record (*see People v Prochilo*, 41 NY2d 759, 761 [1977]). Nor is there any basis for disturbing the court's finding that defendant's sole witness, his fiancée, "whose testimony was internally inconsistent in many significant respects," was not believable.

Considering the totality of the circumstances, defendant is not entitled to suppression of the weapon. The testimony supports the trial court's finding that the facts available to the officers, including defendant's furtive behavior, suspicious actions in looking into the back seat on multiple occasions and refusal to follow the officers' legitimate directions, went beyond mere nervousness. Rather, defendant's actions both inside and outside of the vehicle created a "perceptible risk" and supported a reasonable conclusion that a weapon that posed an actual and specific danger to their safety was secreted in the area behind the front passenger seat, which justified the limited search of that area, even after defendant had been removed from the car and frisked (*People v Mundo*, 99 NY2d 55, 59 [2002]; *People v Carvey*, 89 NY2d 707, 709-711 [1997]; *People v Washington*, 91 AD3d 534, 535 [1st Dept 2012], *lv denied* 18 NY3d 999 [2012]; *People v Vehap*, 234 AD2d 210 [1st Dept 1996], *lv denied* 90 NY2d 865 [1997]; *People v Hutchinson*, 22 AD3d 681, 683-684 [2d Dept 2005]). Concur—Andrias, Saxe, DeGrasse and Richter, JJ.

Acosta, J.P., dissents in a memorandum as follows: I believe defendant is entitled to suppression of a pistol found by the police in a shopping bag located on the floor of the back seat of a car defendant was driving. Evidence that, during a traffic stop, defendant behaved in a very nervous manner, looked several times toward the back seat of the car, and failed to comply with the officers' directives, was not sufficient to lead to a reasonable conclusion that a weapon located within the car presented an actual and specific danger to the officers' safety so as to justify a limited search of the car after defendant had been removed from the car and frisked without incident. There was no testimony that defendant looked in the specific direction of the bag or even the floor. Accordingly, there was nothing that could be analogized to movements within a car to reach or conceal something, which could reasonably have been taken to indicate the presence of a concealed weapon (*see People v Newman*, 96 AD3d 34, 42 [1st Dept 2012], *lv denied* 19 NY3d 999 [2012]). In the absence of objective indicators that could lead to a reasonable conclusion that there was a substantial likelihood that a weapon was located in defendant's car, the search was

unlawful since no actual and specific danger threatened the safety of the officers (*see People v Hackett,* 47 AD3d 1122, 1124 [3d Dept 2008]; *Matter of Terrell W.,* 301 AD2d 536 [2d Dept 2003]).