The People of the State of New York, Appellant,
against
Erica Maher, Respondent.



Appeal from an order of the Justice Court of the Town of Riverhead, Suffolk County (Richard A. Ehlers, J.), dated June 26, 2013. The order granted defendant's motion to suppress evidence and dismissed the accusatory instruments.




ORDERED that the order is reversed, on the law, defendant's motion to suppress evidence is denied, the accusatory instruments are reinstated, and the matter is remitted to the Justice Court for all further proceedings.
On December 23, 2010, the People charged defendant in separate simplified traffic informations with, among other things, driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]) and following too closely (Vehicle and Traffic Law § 1129 [a]). Defendant moved to suppress her statements, physical evidence, and the results of field sobriety tests on the ground that she had been arrested without probable cause. The Justice Court granted the motion to the extent of ordering a hearing thereon.
At the hearing, the arresting officer, whose credibility the court did not find wanting, testified that when he reached the scene of an automobile accident shortly after 5:00 p.m. on December 23, 2010, he observed defendant seated behind the wheel of a vehicle that had rear-ended another vehicle. The officer approached defendant to obtain her driver's documentation. He detected the strong odor of an alcoholic beverage on her breath and observed that she slurred her words as she admitted that she had consumed "a couple" of alcoholic beverages within the previous hour. When defendant exited her vehicle to perform field sobriety tests, she exhibited instability before reaching a standing posture. The officer administered a horizontal gaze nystagmus (HGN) test, which, in his opinion, she failed, and, after defendant refused to participate in a walk-and-turn test (insisting the test was "a waste of time") and was unable even to raise one foot off the ground on a one-legged stand test, the officer discontinued the testing process and arrested defendant for driving while intoxicated. Defendant later refused a chemical test of her blood alcohol content.
In a written decision dated July 25, 2013, the Justice Court granted defendant's motion to suppress evidence on the ground that the results of the field sobriety tests were inadmissible because the People had failed to prove that they had been administered in a manner consistent with the "Concepts and Principles of the Standardized Field Sobriety Tests" manual promulgated by the National Highway Traffic Safety Administration (NHTSA), and, impliedly, because there was otherwise insufficient evidence to establish probable cause to arrest defendant for driving [*2]while intoxicated. The court dismissed the two aforementioned accusatory instruments. The People appeal and we reverse.
"In determining probable cause, the standard to be applied is that it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator, for conduct equally compatible with guilt or innocence will not suffice' " (People v Vandover, 20 NY3d 235, 237 [2012], quoting People v Carrasquillo, 54 NY2d 248, 254 [1981]). A person may be arrested for violating Vehicle and Traffic Law § 1192 (1) if it is more probable than not that he or she exhibits "actual[] impair[ment], to any extent, [of] the physical and mental abilities which [a person] is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (People v Cruz, 48 NY2d 419, 427 [1979]). It is irrelevant that defendant was ultimately arrested and charged with common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) because:
"[T]he legality of an arrest . . . is not conditioned upon whether the arresting officer specified the correct subdivision of Vehicle and Traffic Law § 1192, or upon his [or her] belief as to which subdivision had been violated. All that is required is that [the officer] have had reasonable cause to believe that defendant had violated Vehicle and Traffic Law § 1192."
(People v Hilker, 133 AD2d 986, 987-988 [1987]; see e.g. People v Cosimano, 40 Misc 3d 132[A], 2013 NY Slip Op 51141[U], *2 [App Term, 9th & 10th Jud Dists 2013] ["The hearing proof sufficed to establish probable cause to arrest defendant for, at the very least, driving while impaired"]; see also People v Freeman, 37 Misc 3d 142[A], 2012 NY Slip Op 52281[U], *2 [App Term, 9th & 10th Jud Dists 2012]; People v Gingras, 22 Misc 3d 22, 23 [App Term, 9th & 10th Jud Dists 2008].) 
Further, Vehicle and Traffic Law § 1194 (1) (a) states that "a police officer may, without a warrant, arrest a person, in case of a violation of [Vehicle and Traffic Law § 1192 (1)], if such violation is coupled with an accident or collision in which such person is involved, which in fact has been committed, though not in the police officer's presence, when the officer has reasonable cause to believe that the violation was committed by such person." This statute is construed to expand the arrest authority to situations where the arresting officer neither witnessed the accident nor observed the driver's operation but where indicia of impairment are present (e.g. People v Farrell, 89 AD2d 987, 988 [1982]; People v O'Brien, 15 Misc 3d 1141[A], 2007 NY Slip Op 51089[U] [New Rochelle City Ct, Westchester County 2007]). Further, the fact of an accident may be construed to circumstantially suggest diminished motor control or impaired driving judgment by reason of alcohol consumption, without regard to proof of fault (see People v Padmore, 44 Misc 3d 129[A], 2014 NY Slip Op 50988[U], *2 [App Term, 2d, 11th & 13th Jud Dists 2014] ["While the circumstances of the accident in this case may have been capable of innocent explanation . . . they nonetheless supported an inference that a crime had been committed because the vehicle had been driven by a person under the influence of alcohol' "], quoting People v Booden, 69 NY2d 185, 188 [1987]; e.g. People v Thomas, 68 AD3d 482, 483 [2009]; People v Murray, 7 AD3d 828, 830 [2004]; People v Cavanaugh, 264 AD2d 903, 904 [1999]; Villalobos v County of Nassau, 15 Misc 3d 135[A], 2007 NY Slip Op 50751[U], *2 [App Term, 9th & 10th Jud Dists 2007]).
The testimony as to the accident, defendant's physical appearance and demeanor, her admissions as to recent alcoholic beverage consumption, and the presence in her vehicle of a Pepsi bottle containing a liquid that smelled like an alcoholic beverage, established a proper basis for defendant's arrest, at the very least, for driving while impaired (see Vehicle and Traffic Law § 1194 [1] [a]; People v Cosimano, 40 Misc 3d 132[A], 2013 NY Slip Op 51141[U], *1; People v Crane, 26 Misc 3d 134[A], 2010 NY Slip Op 50136[U], *2 [App Term, 9th & 10th Jud Dists 2010]; see also People v Carota, 93 AD3d 1072, 1075 [2012]; People v Lizzio, 178 AD2d 741, 742 [1991]; People v Tieman, 112 AD3d 975, 976 [2013]; People v Blajeski, 125 AD2d 582, [*3]582-583 [1986]; People v Granda-Vintmill, 41 Misc 3d 135[A], 2013 NY Slip Op 51879[U], *2 [App Term, 2d, 11th & 13th Jud Dists 2013]; People v Sykes, 31 Misc 3d 126[A], 2011 NY Slip Op 50442[U], *1-2 [App Term, 2d, 11th & 13th Jud Dists 2011]; People v Gingras, 22 Misc 3d at 23; People v Shihab, 19 Misc 3d 137[A], 2008 NY Slip Op 50808[U], *1 [App Term, 1st Dept 2008]; People v Peck, 16 Misc 3d 126[A], 2007 NY Slip Op 51213[U], *1 [App Term, 9th & 10th Jud Dists 2007]). The sole ground for the court's rejection of a probable cause finding was that, absent any incriminating results of field sobriety tests, the officer lacked probable cause to arrest defendant. We need not determine whether the court accorded the appropriate authoritative weight to the NHTSA procedures and properly applied them to the facts (here, to only the HGN test), because, on the facts and circumstances presented, a negative result of one test inadequately administered and of two tests which defendant declined to perform is of no exculpatory value, and because probable cause to arrest for a Vehicle and Traffic Law § 1192 violation " need not always be premised upon the performance of field sobriety tests or any specific number of such tests' " (People v Wallgren, 94 AD3d 1339, 1341 [2012], quoting People v Kowalski, 291 AD2d 669, 670-671 [2002]). The failure to establish that the tests had been properly administered does not in and of itself necessarily diminish the strength of the remaining proof of the existence of probable cause.
Defendant argues that innocent explanations are available for each of the indicia of impairment/intoxication she exhibited at the arrest scene, relying heavily on the oft-repeated dictum in Carrasquillo that "conduct equally compatible with guilt or innocence will not suffice" (54 NY2d at 254). However, compared to evidence of intoxication, the proof necessary for a conviction for driving while impaired, and necessarily, an arrest therefor, is "far less rigorous" (People v Reding, 167 AD2d 716, 717 [1990]), and, in making the determination to arrest, an officer is not obligated to eliminate all possible innocent explanations for incriminating facts (People v Mercado, 68 NY2d 874, 877 [1986]; People v Omowale, 83 AD3d 614, 618 [2011]; People v Lewis, 50 AD3d 595, 595 [2008]; People v Thompson, 43 Misc 3d 137[A], 2014 NY Slip Op 50708[U] [App Term, 2d, 11th & 13th Jud Dists 2014]; see also People v Daye, 194 AD2d 339, 340 [1993] ["While (a) defendant may offer innocent explanations for his (or her) behavior, that does not prevent the police from acting on their well-founded conclusions"]; People v Brown, 151 AD2d 199, 204 [1989] ["(a)lthough each factor, standing alone, could be susceptible to an innocent interpretation" an arrest may still be justified where the facts, considered collectively and in light of the arresting officer's training and experience, so merit] [internal quotation marks and citation omitted]).
Finally, the purported failure to establish probable cause to arrest for driving while intoxicated did not justify the dismissal of the instrument accusing defendant of violating Vehicle and Traffic Law § 1129 (a), and, in any event, the failure of proof of probable cause to arrest at a suppression hearing does not empower a trial court unilaterally to dismiss an accusatory instrument (People v Yendo, 30 Misc 3d 135[A], 2011 NY Slip Op 50140[U], *2 [App Term, 9th & 10th Jud Dists 2011]; People v Asher, 16 Misc 3d 89, 90-91 [App Term, 9th & 10th Jud Dists 2007]).
Accordingly, the order is reversed, defendant's motion to suppress evidence is denied, the accusatory instruments are reinstated, and the matter is remitted to the Justice Court for all further proceedings. 
Marano and Garguilo, JJ., concur.
Iannacci, J.P., dissents in part and concurs in part in a separate memorandum.
Iannacci, J.P., dissents in part and concurs in part and votes to modify the order by vacating so much thereof as dismissed the accusatory instruments, in the following memorandum:
I respectfully disagree with the majority that the proof at the suppression hearing established probable cause to arrest defendant for driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), or even for driving while ability impaired (Vehicle and Traffic Law § 1192 [1]). [*4]However, I agree with the majority's determination that such a failure of proof provides no basis to dismiss the accusatory instruments.
According to the report of defendant's refusal to submit to a chemical test of her blood alcohol content, Officer William Keegan arrested defendant for operating a motor vehicle while intoxicated and he based the arrest on:
"[an] accident involvement, operating vehicle erratically and vehicle operator smelled of alcohol, possible alcohol recovered in car, red watery eyes, unsteady on the feet; and that the operator refused to submit to a breath test by stating I want to speak to somebody and I want to wait' " (emphasis added).
At the suppression hearing, Officer Keegan testified that, while on motor patrol, he had received a radio report of an automobile accident involving two vehicles. When he arrived at the accident scene about 10 minutes later, at 5:35 p.m., he observed that the air bag in defendant's vehicle had deployed. He did not testify that he had observed defendant operating the vehicle erratically. 
At the suppression hearing, he admitted that, when he asked defendant to exit her vehicle to perform field sobriety tests, he did not yet have enough evidence to arrest her. His testimony was inconsistent regarding which field sobriety test he had administered first, second, and third, upon which he formulated the basis of his conclusion that she had failed the tests, thereby stripping the test results of any probative value. Officer Keegan testified that he first gave defendant the horizontal gaze nystagmus (HGN) test. He then changed his testimony to state that he first gave defendant the one-legged stand test, after being questioned by defense counsel about his inconsistent testimony at a suspension hearing. Further, Officer Keegan did not recall if he had been instructed during his training that his strobe lights should be turned off during a HGN test so that it does not distract the eyes. The second test was the nine-step walk test. The officer also testified that he recalled defendant saying, "What is this for, it's a waste of time," or "you are asking me to do something unfair." He did not take any field notes; rather, he merely documented his findings in an incident report written five days later.
Officer Keegan further testified at the suppression hearing that defendant was able to leave her vehicle, on the driver's side, after being impacted by the air bag, and to walk to the rear of her car between her car and the patrol car to perform field sobriety tests. There was traffic on the driver's side of her car, and she walked 9 or 10 steps without assistance. Defendant was compliant and understood Officer Keegan's instructions. Further, no evidence was elicited from the officer at the suppression hearing regarding whether defendant had glassy, bloodshot, red or watery eyes. Had he so testified, Officer Keegan would have been questioned about the force of the impact of a deploying air bag and of the chemicals that commonly cause eye irritation. Additionally, Officer Keegan's suppression hearing testimony—to the effect that defendant was unsteady as she exited the car—was challenged when it was established that she did not need the officer's assistance, that the unsteadiness was brief and minimal, that she exited the car on a cold December night without a coat, that she was not walking on black top but on gravelly, unmaintained poured concrete, and that he could not describe her shoes. Finally, Officer Keegan admitted that the slurred speech could have resulted from the air bag deployment.
Officer Keegan's testimony at the April 2, 2012 suppression hearing differed from his testimony at the license suspension hearing held on January 31, 2011 in significant respects. At the license suspension hearing, Officer Keegan testified that, when he arrived at the scene, he asked defendant if she had been drinking and that she replied that she had consumed two drinks about an hour earlier. Having observed that defendant had bloodshot eyes, was unsteady on her feet, and exhibited the "distinct" odor of an alcoholic beverage, the officer asked defendant to step outside her vehicle to perform standardized field sobriety tests. He first asked defendant to perform the one-legged stand test, instructing her to lift her right leg slightly off the ground and to keep her arms at her sides. It was dark, and the police strobe lights were flashing. She [*5]followed his instructions, raising her right foot. The officer testified that defendant raised her heel off the ground, but he never told her that she should not do that, and merely moved on to the next test, the nine-step walk test. Defendant stated, "I just - I'm not going to do this," and he then administered the HGN test, using a black pen. The test lasted 15 to 20 seconds. The pen was 8 to 10 inches from her nose, and the street lights in this area were "a little off on the other side of the street." Officer Keegan observed that defendant's eyes lacked smooth pursuit when moving left to right. The officer also testified that he attempted to administer a preliminary breath test at the scene, and, although defendant twice attempted to blow into the Alco-Test instrument, the device did not produce a reading. Officer Keegan acknowledged that he had been taught, and was aware, that a person may not be able to blow into this machine if an air bag is deployed because the propellant from the air bag can irritate the airway. Defendant did not refuse to blow into the machine. Defendant was arrested for driving while intoxicated and was brought to police headquarters. Officer Keegan read from the "A.I.R.," which indicated that defendant had stated that she consumed "1, 2" alcoholic beverages, that is, "a cocktail and a half" "within 2 hours" [sic] commencing at "2:30 p.m." and stopping at "5:00 p.m." Defendant refused to sign the A.I.R. The officer then told defendant that she should submit to a chemical test, and, at 5:58 p.m., she responded that she first wanted to speak to her attorney.
Accordingly, based upon Officer Keegan's contradictory statements at the license suspension hearing and at the suppression hearing, and because the testimony was otherwise insufficient to support a probable cause finding, I would affirm so much of the Justice Court's order as granted the motion to suppress evidence. Conduct which can equally be susceptible to innocent or culpable interpretation will not constitute probable cause (see People v Moore, 6 NY3d 496, 501-502 [2006]; People v Carrasquillo, 54 NY2d 248, 254 [1981]; People v DeBour, 40 NY2d 210, 216 [1976]; People v Thompson, 132 AD2d 719, 720 [1987]).
Decision Date: June 27, 2016